BANCO DE LA VIVIENDA DE PUERTO RICO, demandante y recurrente, *v.* PAGÁN INSURANCE UNDERWRITERS, INC., e EAGLE STAR INSURANCE COMPANY, LTD. OF LONDON, ENGLAND, demandadas y recurridas.

*Número:* R-80-549    *Resuelto:* 6 de mayo de 1981

*William Malavé Torres* e *Irma J. Planadeball Moreno*, abogados de la parte recurrente; *María Isabel Córdova Iturregui*, abogada de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

El Banco de la Vivienda de Puerto Rico prestó a la constructora La Trinidad Development for the Elderly, Inc., la cantidad de $2,800,000 para construcción de un multipisos destinados a condominio, que le fue garantizado con hipoteca sobre una parcela de terreno en la Calle Castillo Núm. 9 de Ponce, donde habría de levantarse la edificación. Para septiembre de 1977, hallándose el edificio substancialmente terminado, para proteger su crédito hipotecario el acreedor Banco de la Vivienda decidió obtener un seguro sobre dicho inmueble el que por disposición de ley se tramitó mediante subasta por el Negociado de Seguros Públicos del Departamento de Hacienda. La demandada recurrida Eagle Star Insurance Company, Ltd., por su agente general Pagán Insurance Underwriters, Inc., aceptó la invitación a subasta con su extenso pliego de condiciones y en 20 octubre, 1977 expidió la póliza con prima anual de $5,881.00 que incluía el riesgo de vandalismo o daños maliciosos. En la invitación a

subasta la naturaleza de la propiedad asegurada se describió así:

*Premises Operations*
Building known as La Trinidad located at #9, Castillo St., Ponce, Puerto Rico. Rated as condominium with mercantile spaces and automobile parking area.
NOTE: *This building is actually unoccupied.*

El endoso de vandalismo de la referida póliza dice en cuanto ahora nos concierne:

. . . The Company shall not be liable, as respects these perils, for any loss:

.      .      .      .      .      .      .      .

5. [I]f the described buildings had been vacant or unoccupied beyond a period of 30 consecutive days immediately preceding the loss, whether or not such period commenced prior to the inception date of this endorsement.
NOTE: A building in process of construction shall not be deemed vacant or unoccupied. (¹)

El asegurado recurrente Banco de la Vivienda pagó a su aseguradora dos años de primas que importan $11,762.00. En diciembre de 1978 el Banco reclamó de la aseguradora el pago de daños causados al edificio por vandalismo, y ésta negó cubierta y procedió a cancelar la póliza efectiva la cancelación el 16 marzo, 1979, a pesar de que la reclamación es por $11,411.00 y que el asegurado ofreció a la demandada la opción de devolver los $11,762.00 de primas ya pagadas. El Tribunal Superior desestimó la demanda mediante sentencia sumaria. Notamos tangencia con *Vda. de Rivera* v. *Southland Life Ins. Co.*, 105 D.P.R. 273 (1976), en su dictamen equiparando el recibo de primas por la compañía que induce la creencia de cubierta desde que se hizo el

---

(¹) En contradicción de la condición del edificio que en la invitación a subasta la aseguradora aceptó como "actually unoccupied" en la póliza se omitió ese dato y se describió el edificio como "one, fifteen story all concrete building known as *La Trinidad*. Occupied as condominium with mercantile occupancy located at: #9 Castillo Street, Ponce, Puerto Rico".

pago, con un seguro interino o temporero que lo cubre hasta que la aseguradora acepta el riesgo, o lo rechaza y devuelve el dinero, y el 17 diciembre, 1980 expedimos auto de revisión.

El seguro en este caso fue contratado por el Secretario de Hacienda actuando como órgano del Estado, utilizándose el método de subasta como el más apropiado para la mejor protección del interés público, según ordenado con especialidad para los seguros que cubran los riesgos del Estado Libre Asociado, sus municipios, corporaciones y autoridades públicas. Art. 12.020(3) (26 L.P.R.A. sec. 1202(3)). Por tanto, las condiciones y términos de la invitación a subasta aceptados por la aseguradora, no podrán incumplirse en el texto de la póliza que en este caso no es más que la forma externa de lo acordado entre partes al licitar la aseguradora y adjudicársele la subasta por el Secretario de Hacienda. Dichos términos y condiciones esenciales deben leerse como insertos en el contrato de seguro. De este modo se cumple con la interpretación integral de la póliza siguiendo lo dispuesto en el Art. 11.250 del Código de Seguros, 26 L.P.R.A. sec. 1125, que dice:

*Interpretación de pólizas*

Todo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta.

En la invitación a subasta se describió el edificio como "[r]ated as condominium . . . actually unoccupied" (clasificado como condominio . . . realmente desocupado), condición que desde un principio coloca la propiedad asegurada fuera de la exclusión provista en la póliza relevando la aseguradora de responsabilidad en caso de hallarse el edificio desocupado durante los 30 días que inmediatamente preceden la pérdida, toda vez que no se limitó el período de desocupación, ni se anticipó cuándo

cesaría ésta durante la vigencia de la póliza. (²) El cambio de lenguaje en la póliza identificando la propiedad como "one, fifteen story all concrete building . . . [o]ccupied as condominium with mercantile occupancy" carece de toda eficacia y validez en cuanto conflija con el texto correlativo de la invitación a subasta, por tratarse de un elemento esencial de contratación sobre el cual coincidieron el consentimiento del Secretario de Hacienda, comprador del seguro y el de la aseguradora recurrida Eagle Star Insurance Co., Ltd. Guarda más armonía con la manifiesta intención de las partes al contratar, la nota al final de la citada cláusula de exclusión: "A building in process of construction shall not be deemed vacant or unoccupied." *Appleman* (³) da su respaldo a este método de interpretación *global* del contrato de seguro que dicta el Art. 11.250 del Código, *ante*, al decir: "En la determinación de si ha surgido una situación de desocupación que releve al asegurador de responsabilidad, es necesario tomar en cuenta la naturaleza del local y el uso a que se le destina, y [al juzgador de hechos] corresponde determinar la intención de las partes sobre el particular. Y cada caso se decidirá sobre sus propios hechos particulares."

Establecido el hecho por declaración afirmativa en la invitación a subasta de que el edificio estaba desocupado y que no era anticipable la fecha de su ocupación, era a la aseguradora a quien correspondía mantener un seguimiento de esta situación, antes de aceptar la renovación y pago reiterado de primas. Ella debía derrotar la presunción de que admitida una situación, continúa ésta todo el tiempo que ordinariamente duran las cosas de igual naturaleza. Regla 16(31) de Evidencia.

---

(²) En cuanto a este extremo, las conclusiones de la sala de instancia en la sentencia sumaria, contienen la siguiente aseveración categórica: "No existe controversia en cuanto a que se pagaron las primas correspondientes y que la propiedad ha estado vacante y abandonada *desde la incepción de la Póliza*, y que *nunca se ha ocupado la misma*." (Bastardillas nuestras.)

(³) *Insurance Law & Practice*, Vol. 4-A, pág. 487.

■ La aseguradora debía tener conocimiento de que el comprador de un seguro contra vandalismo quiere protegerse de una actividad criminal que usualmente se produce contra propiedades desocupadas, toda vez que no hay mayor disuasivo contra la destrucción vandálica que la ocupación o presencia continua de personas en el inmueble asegurado. El contrato de seguro, por ser uno de adhesión[4] en el cual la aseguradora escribe a su arbitrio todas las cláusulas y condiciones, está por dicha razón sujeto, más que cualquier otro contrato bilateral, a la influencia y modificación que sobre el texto produce la intención y propósito de las partes al vender el asegurador y comprar el asegurado la cubierta específica contra el riesgo particular que es causa del contrato. El Código Civil es siempre fuente de derecho supletorio al que deberá acudirse para proveer la correcta interpretación del contrato de seguro en situación no prevista por la norma especial de interpretación de pólizas, del Art. 11.250 del Código de Seguros, 26 L.P.R.A. sec. 1125.

■ El incuestionable conocimiento anticipado por la aseguradora del estado de desocupación y final etapa de construcción del inmueble a la fecha en que expide la póliza, sin que se fijara plazo para la ocupación, le impiden invocar la cláusula de exclusión de responsabilidad por desocupación durante los 30 días que precedieron a la pérdida. La conducta de ambas partes contratantes muestra una intención clara de cubrir el edificio contra riesgo de vandalismo descartando el elemento de ocupación de la causa del negocio jurídico, y cualquier expresión en contrario en el texto impreso de la póliza surge viciada y carente de coercitividad en cuanto tienda a enervar aquella legítima intención que según el Art. 1234 del Código Civil se juzga principalmente atendiendo a los actos de los contratantes anteriores, coetáneos y posteriores al contrato.

[4] *Casanova* v. *P.R.-Amer. Ins. Co.*, 106 D.P.R. 689, 696–697 (1978), y casos allí citados.

"La interpretación de los contratos y demás actos jurídicos, aunque haya de partir de la expresión contenida en las palabras pronunciadas o escritas, no puede detenerse en el sentido riguroso o gramatical de las mismas, y ha de indagar fundamentalmente la intención de las partes y el espíritu y finalidad que hayan presidido el negocio, infiriéndose de las circunstancias concurrentes y de la total conducta de los interesados, como así viene a sancionarlo el Art. 1.282 [1234 P.R.], el cual no excluye —como ha advertido esta Sala, entre otras sentencias, en la de 8 abr. 1931— los actos anteriores ni las demás circunstancias que puedan contribuir a la acertada investigación de la voluntad de los otorgantes, siendo indudable que entre esos elementos podrá tener importancia muy relevante la conexión que el acto o negocio guarde con otros que le hayan servido de antecedente o base legal, siempre que la parte contra la cual se esgrima esta norma interpretativa haya tenido, o debido tener, oportuno conocimiento de ello. (Ss de 20 abr. 1944 y 14 ene. 1964.)"[5]

La clasificación original del edificio en la invitación a subasta como condominio desocupado, el conocimiento por la aseguradora de que se trataba de una obra recién terminada o en la etapa última de terminación que nunca había estado ocupada, la total ausencia durante la contratación del seguro de la fijación de una fecha previsible en que el edificio estaría ocupado, junto al hecho conocido por la aseguradora de que el edificio terminado no se ocupó, permaneciendo en el mismo estado en que se hallaba a la fecha de expedición de la póliza y por todo el tiempo de su vigencia, son todos elementos indicativos de que el contrato de seguro en este caso se salió de la regularidad o rutina impresa de este tipo de endoso contra vandalismo, lo que resulta en total inaplicación de la cláusula de exclusión invocada por la recurrida. La intención de las partes formulada por conducta anterior, coetánea y posterior a la

---

[5] F. Bonet Ramón, *Código Civil comentado*, 2da ed., pág. 1009.

expedición de la póliza excluyó la desocupación como factor determinante de relevo de responsabilidad de la aseguradora.

*Con estos antecedentes y fundamentos, se revoca la sentencia recurrida y se dictará sentencia sumaria estimando la demanda. Revocada.*