# 95 DTA 135

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL I - SAN JUAN**

BELLA INTERNATIONAL CORP., VORTEX MOTOR, CORP.
Demandantes-Apeladas

v.

PAN AMERICAN INSURANCE COMPANY
Demandado-Apelante

Núm. KLAN-95-00091

San Juan, Puerto Rico, a 18 de mayo de 1995

Panel integrado por su Presidente Juez Negrón Soto
y los Jueces González Román y Urgell Cuebas.

González Román, Juez Ponente

Este recurso versa sobre la obligación de una compañía aseguradora de proveerle asistencia legal a su asegurado en un pleito subyacente al de epígrafe.█

Dicho pleito se instó durante la vigencia de una póliza de responsabilidad comercial general. Las corporaciones demandadas, Bella International y Vortex Motor, solicitaron a Pan American Insurance Company le extendiera representación legal en un pleito en el cual les imputan actos dirigidos a destruir la capacidad comercial de una corporación y de sus oficiales. La aseguradora se negó a lo solicitado.

Así las cosas, Bella y Vortex presentaron una acción ante el tribunal apelado dirigida a obtener sentencia declaratoria sobre la obligación de la aseguradora de proveerle representación legal.

Pan American Insurance apela la sentencia declaratoria que fuera dictada sumariamente por el Tribunal Superior. En la misma se ordena a la mencionada aseguradora extender defensa legal y cubierta a las corporaciones Bella International y Vortex Motor. A pesar de que la sentencia expresa que ordena, además de la representación legal, extender cubierta, deberá entenderse por ésta solamente cubierta de representación legal; único aspecto que en esos momentos podía el tribunal resolver. Pan American Insurance señala que el Honorable Tribunal de Instancia erró al no considerar las cláusulas de exclusión de cubierta contenidas en la póliza y al no aplicar las mismas. Además, sostiene que el tribunal debió haber dilucidado la aplicación de las distintas exclusiones de cubierta a las alegaciones en su sentencia.

A continuación pasamos a discutir aspectos relevantes de la póliza de seguros así como la naturaleza de las alegaciones de la acción que aún está pendiente ante el Tribunal de Primera Instancia y que dió margen a la sentencia declaratoria que aquí se apela. Analizaremos además la normativa jurisprudencial en el campo de los contratos de seguros, con especial atención a la obligación de la aseguradora de brindar representación legal a su asegurado. Al así hacerlo, confirmamos la sentencia declaratoria del Tribunal de Primera Instancia. Veamos:

Pan American Ins. Company emitió póliza a favor de Bella International Inc. La misma, titulada *"General Commercial Liability Policy"*, contiene varias disposiciones de responsabilidad por daños que cubren a Bella International y la coasegurada Vortex Motor durante el desempeño de su actividad comercial. Algunos de los daños cubiertos por la póliza son: daños corporales o físicos, daños a la propiedad y daños personales o daños causados por anuncios entre otros. Veamos los detalles pertinentes al caso, de la póliza número CBP8677399 denominada *"Commercial General Liability"*:

*"COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY*

*1. Insuring Agreement.*

*a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We*

*will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:*

*(1).....*

*(2).....*

*b. This insurance applied to:*

*(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;*

*(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services... "*

*"SECTION V - DEFINITIONS*

*1. "Advertising injury" means injury arising out of one or more of the following offenses:*

*a. Oral or written publications of material that slanders or libels a person or organization or disparages(1) a person's or organizations's goods, products or services;*

*b. Oral or written publications of material that violates a person's right of privacy;*

*c. Misappropriation of advertising ideas or style of doing business; or*

*d. Infringement of copyright, title or slogan.*

*2.....*

*3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.*

*10. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:*

*a. False arrest, detention or imprisonment;*

*b. Malicious prosecution;*

*c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;*

*d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or*

*e. Oral or written publications of material that violates a person's right of privacy."*

También incluye una serie de cláusulas de exclusión que definen las situaciones en que la póliza no ofrecerá cubierta.

La misma excluye publicaciones realizadas con conocimiento de su falsedad, conducta constitutiva de violación a estatutos penales e incumplimiento de contrato por otras razones que no sean apropiación ilegal de ideas bajo el contrato *("advertising injury")*. En síntesis, conducta maliciosa no estará cubierta por la póliza. Veamos ésta en detalle:

*"2. Exclusions.*

*a. "Personal injury" or "advertising injury":*

*(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;*

*(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;*

*(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or*

*(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.*

*b: "Advertising injury" arising out of:*

*(1) Breach of contract, other than misappropriation of advertising ideas under and implied contract;*

*(2) The failure of goods, products or services to conform with advertised quality or performance;*

*(3) The wrong description of the price of goods, products or services; or*

*(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting."*

Ahora bien, la demanda instada en el caso base delata un supuesto esquema intencional de causar daño comercial a una serie de personas. No obstante, la demanda contiene, además, aseveraciones que sitúan las actuaciones de las corporaciones demandadas dentro del campo de la contratación, de las leyes antimonopolísticas y de la responsabilidad civil. Le imputan conducta claramente discriminatoria y en violación a la relación fiduciaria entre las partes así como el de diseminar información errónea sobre el servicio que brindaban estas personas. A pesar de que las actuaciones intencionales del asegurado están claramente excluidas de cobertura, existe la posibilidad de que algunas de las actuaciones de Bella International y Vortex Motor estén protegidas por la póliza. Veamos en detalle algunas de las alegaciones de la demanda:

*"15. Bella International y Vortex han adoptado un curso de conducta claramente discriminatorio contra la demandante RCE en violación de la relación fiduciaria y contractual prevaleciente entre ellos y las leyes antimonopolísticas de Puerto Rico y Estados Unidos. Estas prácticas consistían en:*

*"(a).....*

*(b).....*

*(c).....*

*(d).....*

*(e).....*

*(f).....*

*(g) los vendedores de los distribuidores de las co-demandadas Bella y Vortex le informaban a clientes del demandante RCE que ellos podían vender sus carros a mejores precios que la demandante RCE puesto que eran distribuidores.*

*(h) los distribuidores de las co-demandadas Bella y Vortex eran anunciados como una división de Bella o Vortex con el propósito de transmitir la idea al consumir de que por el hecho de ser distribuidores podían vender más barato que la demandante RCE, único distribuidor independiente autorizado.*

*(i).....*

*(j).....*

*(k).....*

*(l) los vendedores de los distribuidores de las co-demandados Bella y Vortex informaban a los clientes de la demandante RCE que éste no ofrecía servicios, lo cual es una importante consideración para muchos compradores al momento de comprar un automóvil.*

*16. Que los anteriores eventos y conducta, además de evidenciar un claro discrimen contra RCE constituyen prácticas ilícitas, de competencia injusta, penadas (sic) por ley y violatorias del principio de buena fe que debe observar la competencia en la libre empresa. Lo anterior es, además, evidenciado por lo siguiente:*

*(a) recomendar a RCE la compra de piezas obsoletas y en mucha mayor cantidad de lo necesario,*

*(b) obligar a la demandante RCE a comprar una alarma para los carros que no eran de fábrica, siendo la compañía a cargo de instalar dichas alarmas propiedad del yerno del señor Jerómino Esteve y esposo de la señora María Esteve, ejecutivo de las co-demandadas Bella y Vortex.*

*(c) pagar a la demandante RCE sólo 5% por concepto de garantía cuando el fabricante le pagaba a las co-demandadas Bella y Vortex 40%.*

*(d) retener $6.00 por hora a la demandante por el trámite para reparaciones bajo garantía cuando éste era un trámite que llevaba a cabo el propio RCE.*

*21. Todo el anterior esquema tiene efectos más graves contra RCE por razón de la animosidad y personalismo de la Sra. María Esteve, persona realmente a cargo de las operaciones de Vortex, contra el Sr. Ray Conaway, lo cual fue reconocido por el propio señor Jerómino Esteve públicamente. Movida por esa animosidad, la Sra. Esteve y el Sr. Carlos Wolf, gerente general de Vortex, para entonces ofrecieron a un grupo de vendedores pagarle hasta $50.00 por cada cliente que dejara de comprarle un auto a RCE e inclusive,*

*autorizó a éstos a hacerles cualquier oferta que mejorara las que pudiera hacer RCE. Además, públicamente la Sra. María Esteve había asegurado que RCE no duraría ni siquiera seis meses en el mercado.*

*26. Que todas estas prácticas ilícitas contra la demandante RCE por parte de las co-demandadas le han causado cuantiosas pérdidas y daños pecuniarios, morales y a su honra y reputación que lo han conducido a la ruina económica y al quebranto moral. Estos daños consisten en lo siguiente:*

*(a).....*

*(b).....*

*(c).....*

*(d).....*

*Daños a la reputación comercial y al crédito en la comunidad mercantil y ante el público en general de RCE en vista de su fracaso económico y embargo del cual fue objeto, ascendente a $14,000,000.00.*

*27. Los actos culposos y neglientes de las demandadas causaron, además, individual y personalmente al Sr. Ray Conaway y al Sr. Ian Sack los siguientes daños:*

*(a) ...*

*(b) Ganancia dejada de percibir por el abandono de las actividades económicas en los Estados Unidos del Sr. Ray Conaway y el Sr. Ian Sack a raíz de las falsas y dolosas representaciones hechas por las co-demandadas Bella y Vortex sobre sus negocios en Puerto Rico, montantes anualmente a $162,000.00 en cuanto al Sr. Ray Conaway y $120,000.00 en relación al Sr. Ian Sack.*

*(c) Daños y angustias mentales ante tan desafortunada experiencia, que ha afectado la vida personal, familiar y social del Sr. Ray Conaway y del Sr. Ian Sack, que le causan sentimientos constantes de ira, frustración, nerviosismo y sensación de impotencia emocional en su desenvolvimiento diario, lo cual es remediablemente (sic) con la suma de $750,000 para cada uno."*

Dentro del amplio marco sustantivo de la responsabilidad civil se reconoce la responsabilidad tanto por actos intencionales como negligentes. Es decir, nuestro ordenamiento reconoce la obligación de indemnizar tanto en presencia de un acto culposo o de uno negligente. La determinación en cuanto a si la conducta imputada constituyó un acto intencional, depende si los demandados actuaron con deseo o designio de causar cierto resultado inmediato, o como la elección consciente de un fin. Por lo general, la intención es un proceso secreto de la mente humana que no es susceptible de conocimiento cierto por parte de otras personas. Véase, Herminio Brau del Toro, *Los Daños y Perjuicios Extracontractuales en Puerto Rico,* **Publicaciones J.T.S.,** , págs. 79 y siguientes.

En el pleito base se alega que las compañías Bella y Vortex, a través de sus agentes y oficiales, cometieron una serie de actos dirigidos a destruir la capacidad comercial de unas personas. Aunque gran parte de las alegaciones imputan conducta intencional, otras no necesariamente se sostendrían ante un examen para determinar su intencionalidad. Por otro lado, se alega que Bella y Vortex le enviaron mercancía defectuosa a los demandantes y pregonaron a clientes que los demandantes ofrecían un servicio defectuoso. Estas

alegaciones, que denotan falta del debido cuidado que imponía la relación comercial entre las partes, unidas a la liberalidad con que se deben interpretar las mismas, podrían dar margen a conducta negligente y, por consiguiente, razonablemente cubierta por la póliza. Claro está, esa determinación correspondería hacerla al juzgador de hechos en la consideración objetiva de la prueba dentro de un juicio plenario.

El negocio de los seguros está investido de sustancial interés público y es por ésto que ha sido extensamente reglamentado por el Estado. Véase: Código de Seguros, Ley Núm. 77 de 19 de junio de 1957, 26 L.P.R.A. Sec. 101, *et seq.* La interpretación de las cláusulas de una póliza de seguros, utilizando las normas de derecho angloamericano y derecho civil, se hará en forma global, a base del conjunto de sus términos y condiciones, según se expresa en la póliza. Por ser los contratos de seguros contratos de adhesión, en caso de obscuridad, las cláusulas de dichos contratos deberán ser interpretadas en la forma menos favorable al asegurador. *PFZ Properties Inc. v. General Accident Insurance Company, P.R.,* **94 J.T.S. 116**; *Rivera Robles v. Insurance Co. of P.R.,* 103 D.P.R. 91, 93 (1974); *Barreras v. Santana,* 87 D.P.R. 227, 231 (1963). Es por ésto que cuando los contratantes pactan sobre una materia reglamentada por ley, las disposiciones estatutarias se entienden incorporadas desde el principio al contrato, y no pueden las partes evadir tal reserva del poder soberano del Estado para proteger los intereses vitales de sus habitantes, Bernier y Cuevas Segarra; *Aprobación e Interpretación de las Leyes en Puerto Rico,* **Publicaciones J.T.S.,** pág. 282, (1987). Por ser el contrato de seguro uno de adhesión, en el cual la aseguradora inscribe a su arbitrio todas las cláusulas y condiciones, está, más que cualquier otro contrato bilateral, sujeto a la influencia y modificación que sobre el texto produce la intención y propósito de las partes, *Banco de la Vivienda v. Pagán Ins. Underwriters,* 111 D.P.R. 1 (1981).

El propósito de las pólizas de seguro es brindar protección al asegurado. Por lo tanto, el deber de defender a un asegurado de pleitos en su contra es parte esencial de la cubierta que se contrata con una compañía aseguradora. Es decir, que entre las obligaciones accesorias impuestas a una compañía de seguros como resultado del otorgamiento de un contrato de póliza, se encuentra el deber de proveer representación legal al asegurado en litigios cubiertos por los términos del contrato de seguro. Véase: *Couch on Insurance,* 2d, sec. 51:35 *et seq.,* págs. 438 (Rev. Ed. 1982); 7C Appleman, *Insurance Law and Practice,* secs. 4681 *et seq.,* págs. 2 *et seq.* (Berdal Ed. 1979).

Consistentemente se ha resuelto en nuestra jurisdicción que la determinación sobre si un pleito efectivamente cae bajo los términos de una póliza de seguro se rige, en primera instancia, por las alegaciones de la demanda. Véase, *Vega v. Pepsi-Cola Bot. Co.,* 118 D.P.R. 661, 665-666 (1987); *Morales Garay V. Roldán Coss,* 110 D.P.R. 701, 708 (1981); *Fernández v. Royal Indeminity Co.,* 87 D.P.R. 859,863 (1963); véase, también, *Boston Old Col. Ins. v. Tribunal Superior,* 104 D.P.R. 517 (1975).

Existe la obligación de proveer representación legal si de una interpretación liberal de las alegaciones surge la posibilidad de que el asegurado esté protegido por la póliza. De ser así la compañía de seguros tiene la obligación de asumir su representación. Esta obligación subsiste aunque la acción sea infundada, falsa o fraudulenta, e independientemente de cuál sea el resultado del caso y de su adjudicación final. Cualquier duda se resuelve en favor de proveer dicha representación. Allan D. Wint, *Insurance Claims and Disputes,* sec. 4.02, págs. 132-133 (2da ed. 1988). Es por tal motivo que la obligación de ofrecer representación legal al asegurado es aún más extensa que la obligación de indemnizar por daños en la medida de que éstos están cubiertos por la póliza de seguros, *PFZ Properties Inc. v. General Insurance Company, P.R. Ltd., supra; Pagán Caraballo v. Silva,* 122 D.P.R.105, págs. 111-113 (1988), *Vega v. Pepsi Cola Bot. Co.,* 118 D.P.R. 661 (1987).

Como el propósito del contrato de seguros es la indemnización y la protección en caso de

producirse un suceso incierto previsto en el mismo, las cláusulas de exclusión serán interpretadas restrictivamente; las dudas serán resueltas de modo que se cumpla con el propósito de la póliza, *PFZ Properties Inc., supra.* Por esta razón concurrimos con la conclusión a la cual llegó el Tribunal de Primera Instancia. La aplicación de las exclusiones de cubierta de la póliza en casos como el de autos, en el cual están entremezcladas, corresponden a un juicio plenario en donde el tribunal tenga la oportunidad de aquilatar prueba y llegar a sus determinaciones de hechos. De ahí que la jurisprudencia en casos de seguros consistentemente requiera que se tomen en cuenta los hechos y circunstancias del caso, así como los fines y las expectativas del asegurado al adquirir la póliza. Coincidimos con la apreciación del tribunal inferior en el sentido de que la aseguradora ha sido severamente restrictiva en la interpretación de ese tipo de cláusulas. Máxime cuando, en esta etapa de los procedimienos, la solicitud de las corporaciones demandadas es de representación legal y no de cubierta total. La misma dependerá del resultado del caso subyacente al presente.

Por último, Pan American Insurance Company utiliza como apoyo a su posición en su escrito de apelación lo resuelto en *Aetna Casualty and Surety Co., Inc. v. Centennial Insurance Co.,* 838 F.2d 346. No le asiste la razón al apelante. Si bien es cierto que en dicho caso la cubierta de la póliza en cuestión era por *"personal injury"* y/o *"advertising injury"* y se concluyó que la misma no cubría actos intencionales, en el caso de autos las alegaciones de la demanda del pleito base son mucho más amplias y podrían estar comprendidas bajo la cubierta de la póliza.

Los principios doctrinales que permean los negocios de seguros fueron debidamente aplicados en el caso de autos. El deber de defensa legal es tan abarcador que si la demanda tiene alegaciones que están dentro de la cubierta de la póliza, así como otras que no necesariamente lo están, la compañía de seguros deberá asumir la defensa del asegurado aún sobre aquellas reclamaciones que no estén cubiertas, *Pagán v. Caraballo, supra,* págs. 111-112; *PFZ Properties Inc., supra,* pág. 119. En el escrito titulado *"Moción para Que Se Dicte Sentencia Sumaria y en Oposición a Otra de la Parte Demandante"* presentado por la parte apelante, expresamente señala una aseveración de la demanda que podría dar lugar a responsabilidad bajo los términos de la póliza. Por el momento, la obligación de Pan American Insurance Company es la de proveer representación legal. La obligación de proveer cubierta dependerá si, en efecto, Bella y Vortex incurrieron en negligencia, asunto que aún está pendiente.

## II

Por todo lo anterior, era improcedente, bajo las circunstancias de este caso, exigirle al Tribunal *A Quo* hacer una rebuscada interpretación de las cláusulas de exclusión en esta etapa de los procedimientos, para que excluya la cubierta de la póliza. El análisis esbozado por Pan American Ins. Company es estrecho y no se ciñe a los preceptos establecidos por la jurisprudencia vigente en esta jurisdicción. Corresponde a Pan American Insurance Co. brindarle representación a sus asegurados.

POR LOS FUNDAMENTOS antes expuestos se confirma la Sentencia apelada.

Así lo pronunció y manda el Tribunal y lo Certifica la Secretaria General.

María de la C. González Cruz
Secretaria General

### ESCOLIO 95 DTA 135

1. Civil Núm. K AC-93-0615 (1003), *Ray Conaway Enterprises, Inc., et als., v. Bella International, Corp.*