Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| CITERES SAHYLIS PÉREZ BETANCOURT, JOSÉ MIGUEL PÉREZ GONZALÉZ, PÉREZ PÉREZ, SOCIEDAD LEGAL DE GANANCIALES<br><br>Recurridos<br><br>V.<br><br>YANIRA ORSINI VÉLEZ, MAPFRE PRAICO INSURANCE COMPANY, ASOCIACIÓN DE CONDÓMINOS DOS MARINAS I Y OTROS<br><br>Peticionarios | KLCE202400281 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso núm.: FA2023CV00455<br><br>Sobre: Seguros-Incumplimiento Aseguradoras Huracanes Irma/María |

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Bonilla Ortiz, la jueza Mateu Meléndez y la jueza Prats Palerm

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de marzo de 2024.

Comparece MAPFRE PRAICO Insurance Company, en adelante MAPFRE o la peticionaria, quien nos solicita que revoquemos una *Resolución*, emitida y notificada el 2 de enero de 2024. Mediante la misma, el Tribunal de Primera Instancia, Sala Superior de Fajardo, en adelante TPI, declaró no ha lugar la *Moción de Desestimación* de MAPFRE.

Por los fundamentos que expondremos a continuación, se expide el auto de *certiorari*, se revoca la *Resolución* recurrida y se desestima con perjuicio la demanda contra MAPFRE.

Número Identificador
SEN2024_____

**-I-**

Citeres Sahylis Pérez Betancourt, *José Miguel Pérez González* y la sociedad de bienes gananciales compuesta por ambos, en adelante los recurridos, presentaron una *Demanda* contra MAPFRE sobre código de seguros, incumplimiento contractual, daños y perjuicios.[1] En síntesis, adujeron que el condominio en el que residen y la peticionaria pactaron un contrato de seguros, vigente al momento en que ocurrió el huracán María en Puerto Rico, para cubrir los costos de reemplazo y los daños causados por el fenómeno atmosférico. Las pólizas que cubrían el periodo del 15 de julio de 2017 al 15 de julio de 2018 son las siguientes: la escritura matriz del edificio del condominio con el número 1600178004669 y la póliza multilínea de propiedad personal con el número 1777158001375. En su opinión, la póliza multilínea se endosó incorrectamente, lo que impidió que pudieran reparar los daños sufridos en su apartamento. Además, alegaron que, tras el paso del huracán, el condominio contrató los servicios de un ajustador público certificado, quien sometió una reclamación a MAPFRE. Del mismo modo, arguyeron que otros titulares también comenzaron a someter reclamaciones por los daños sufridos en sus respectivos apartamentos, pero MAPFRE procedió a emitir varios cheques a favor del condominio y no de cada titular por su reclamo individual.[2]

Como consecuencia de lo anterior, los recurridos acudieron a la Oficina del Comisionado de Seguros de Puerto Rico, en adelante OCS. Mediante *Orden*, la entidad determinó que la póliza multilínea personal debió

---

[1] Apéndice de la peticionaria, págs. 1-15.
[2] *Id.*, págs. 4-5.

emitirse de manera individual a cada titular y no al condominio y que la representante de MAPFRE "no atendió debidamente las necesidades de los titulares", al vender una póliza individual como una general. Así pues, la OCS concluyó que la peticionaria emitió las pólizas en contravención a sus propios Manuales de Suscripción y violó la Sección 11.050 del *Código de Seguros de Puerto Rico*, en adelante el Código de Seguros.[3]

En fin, en su *Demanda*, los recurridos insistieron en que MAPFRE remitió el pago de las pólizas al condominio, "de manera culposa y negligente", "a sabiendas de que este no tenía un interés asegurable" y que, debido a estas violaciones, adjudicadas y sancionadas por la OCS, no han podido recobrar la cuantía reclamada y han incurrido en gastos de su peculio para reparar los daños.[4]

Por su parte, la peticionaria presentó una *Moción de Desestimación*, mediante la cual puntualizó la siguiente cláusula de la póliza en cuestión: "Demanda Contra Nosotros. No se podrá presentar una acción a menos que se hayan satisfecho las disposiciones de esta póliza y la acción se inicie dentro de un plazo de un año después de la fecha de la pérdida."[5] Así pues, argumentó que el lenguaje de la póliza claramente dispone que no se podrá presentar acción legal contra la aseguradora fuera del término de un año desde la fecha de la pérdida o desde que la parte perjudicada advino en conocimiento del daño alegado. Sin embargo, en el pleito de epígrafe, los recurridos instaron la demanda contra MAPFRE "luego de transcurridos más de cinco (5) años del paso del

---

[3] *Id.*, pág. 5.
[4] *Id.*, págs. 12-13.
[5] *Id.*, págs. 16-28.

Huracán María y a los tres (3) años de haber advenido en conocimiento de los alegados daños…". También, la peticionaria alegó que, el **9 de junio de 2019**, a través de una asamblea extraordinaria, los recurridos se enteraron de que recibirían una cantidad distinta a la representada por el ajustador público del condominio. No obstante, fue el **1 de septiembre de 2019** cuando el consejo aprobó la última oferta de MAPFRE. Finalmente, en su opinión, como los recurridos no presentaron su reclamación en o antes del **1 de septiembre de 2020**, su causa de acción está prescrita.

Posteriormente, los recurridos presentaron una *Oposición a Moción de Desestimación*, en la que adujeron que las alegaciones en la *Demanda* contra MAPFRE son suficientes y están basadas "en las imputaciones que el propio Comisionado ha hecho en contra de MAPFRE y que alega que este [MAPFRE] hizo falsas representaciones para contratar la póliza".[6] Del mismo modo, arguyeron que la cláusula limitativa de un año para presentar la causa de acción contra la peticionaria "debe ser declarada nula por violentar la política pública de facilitar el acceso a los tribunales y a la justicia en general".

En desacuerdo, la peticionaria presentó una *Moción Informativa y Suplementando Moción de Desestimación*, mediante la cual destacó que el Tribunal Supremo de Puerto Rico confirmó la desestimación por prescripción, en cuanto a MAPFRE, de dos de las demandas presentadas por los titulares del condominio, con los mismos argumentos levantados en el pleito de epígrafe.[7]

---

[6] *Id.*, págs. 126-141.
[7] *Id.*, págs. 156-161 y 231-235.

Con el beneficio de la comparecencia de ambas partes, el TPI resolvió lo siguiente:

[…]

**Como parte de los procesos de la Asamblea Extraordinaria llevada a cabo en el Condominio el día 9 de junio de 2019, se le informa a los Pérez que la cuantía de su remuneración será de $16,739.95. Es importante recalcar esta fecha pues, es la fecha exacta en que los Pérez se enteran de que van a recibir menos de la compensación esperada y valorada por el ajustador original.** La Junta hizo el ajuste a la compensación de la reclamación de los Pérez a raíz de un segundo reporte de ajustador de nombre desconocido que la Junta contrató y reevaluó los daños.

**En cuanto a la póliza multilínea, la misma fue erróneamente endosada a favor del Condominio.** Por lo tanto, esta póliza pagó la compensación total al Condominio y el Condominio hizo su distribución entre los asegurados conforme sus propios cálculos. **El 24 de agosto de 2019, el Condominio aprobó la oferta de pago de MAPFRE por la reclamación total del Condominio.** El Condominio acogió una lista de pago de reclamaciones, (cuyo origen no se precisa en la Demanda) que resultó en un pago parcial de la compensación esperada por la reclamación de los Pérez.

. . . . . . . .

Es indiscutible que los Pérez advinieron en conocimiento del menoscabo en la compensación esperada el **9 de junio de 2019.** Ese menoscabo le fue notificado por el Consejo del Condominio, no por MAPFRE pues, MAPFRE no fue la entidad que hizo la división de la compensación correspondiente a los titulares del Condominio Dos Marinas II, si no que fue su junta directiva. **Cualquier acción en daños por esta decisión, la tenían que haber radicado los Pérez en o antes del 20 de junio de 2020, cosa que no ocurrió. Cualquier acción en daños y perjuicios de los Pérez contra MAPFRE está prescrita.**

Sin embargo, **no está prescrita la acción de incumplimiento de contrato de los Pérez contra MAPFRE pues, vencía el 20 de junio de 2023 y esta acción fue radicada antes.**

[…]

En el presente caso, MAPFRE, en vez de pagar a los asegurados las pólizas de contenido, dio este dinero directamente a la Junta del Consejo de Titulares del Condominio Dos Marinas II por haber cometido un error en el endoso de la póliza de contenido. De esta forma, se alega quebró sus deberes contractuales hacia sus asegurados causando daños que surgen de la relación contractual.

Por este curso de acción, no procede que se desestime la Demanda apoyada en la Regla 10.2 de Procedimiento Civil pues, conforme los hechos alegados en la Demanda, existe la posibilidad de que los demandantes puedan prevalecer en alegaciones de incumplimiento de contrato de seguros contra MAPFRE.[8]

Insatisfecha, MAPFRE presentó una *Moción de Reconsideración*, en la que insistió en la cláusula "Demanda Contra Nosotros" por establecer, de forma clara y libre de ambigüedades, que cualquier acción legal contra la aseguradora deberá presentarse dentro del término de 1 año después de la fecha de la pérdida o de la fecha en que se advino en conocimiento del alegado daño, o en su defecto estará prescrita. En su opinión, es este el término que aplica a la controversia y no el término establecido en el *Código Civil de Puerto Rico de 2020*.[9]

Por otro lado, los recurridos presentaron una *Oposición a Moción de Desestimación*, en la que reiteraron los planteamientos esbozados en la *Demanda*.[10]

Evaluados los escritos de ambas partes, el TPI declaró no ha lugar a la reconsideración de MAPFRE.[11]

Aun insatisfecha, la peticionaria presentó una *Petición de Certiorari*, en la que alegó que el TPI cometió el siguiente error:

ERRÓ EL TPI AL NO DESESTIMAR POR PRESCRIPCIÓN LA DEMANDA EN CONFORMIDAD CON EL TÉRMINO PRESCRIPTIVO DE UN (1) AÑO PACTADO EN EL CONTRATO DE SEGUROS SUSCRITO ENTRE LAS PARTES, POR ENTENDER QUE EL TÉRMINO PRESCRIPTIVO APLICABLE ERA EL DE CUATRO (4) AÑOS DISPUESTO EN EL CÓDIGO CIVIL DE 2020.

Examinados los escritos de las partes y los documentos que obran en autos, estamos en posición de resolver.

---

[8] *Id.*, págs. 185-190. (Énfasis en el original y suplido).
[9] *Id.*, págs. 191-224.
[10] *Id.*, págs. 247-258.
[11] *Id.*, págs. 259-261.

-II-

A.

Como cuestión de umbral, la Regla 52.1 de Procedimiento Civil establece el alcance de la revisión discrecional de las resoluciones u órdenes interlocutorias emitidas por el Tribunal de Primera Instancia en los siguientes términos:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia[…].[12]

1.

Rebasado el umbral establecido en la Regla 52.1 de Procedimiento Civil, *supra*, corresponde a este tribunal intermedio determinar si procede revisar la determinación interlocutoria recurrida.

A esos efectos, el auto de *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior.[13] Distinto al recurso de apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de manera discrecional, por tratarse de ordinario de asuntos

---

[12] Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.
[13] *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *García v. Padró*, 165 DPR 324, 334 (2005).

interlocutorios.[14] Sin embargo, nuestra discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera.[15]

Por su parte, la Regla 40 del Reglamento de este Tribunal establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. Sobre el particular dispone:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> A.  Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B.  Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C.  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D.  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F.  Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G.  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[16]

Ahora bien, una vez este Foro decide expedir el auto de *certiorari*, asume jurisdicción sobre el asunto en controversia y se coloca en posición de revisar los

---

[14] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 847; *Medina Nazario v. McNeil Healthcare LLC*, *supra*, pág. 729; *García v. Padró*, *supra*, pág. 334.

[15] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 847; *Municipio v. JRO Construction*, 201 DPR 703, 711-712 (2019); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

[16] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 848; *Municipio v. JRO Construction*, *supra*; 4 LPRA Ap. XXII-B, R. 40.

planteamientos en sus méritos.[17] Sobre el particular, el Tribunal Supremo de Puerto Rico, en adelante el TSPR, afirmó:

> Asumir jurisdicción sobre un asunto, expidiendo el auto de *certiorari*, ha sido definido como la autoridad en virtud de la cual los funcionarios judiciales conocen de las causas y las deciden. Constituye la facultad de oír y resolver una causa y de un tribunal a pronunciar sentencia o resolución conforme a la ley. Dicha jurisdicción incluye la facultad de compeler a la ejecución de lo decretado y puede decirse que es el derecho de adjudicar con respecto al asunto de que se trata en un caso dado.[18]

En fin, al asumir jurisdicción sobre el asunto que tiene ante su consideración mediante la expedición de un auto de *certiorari*, este Tribunal cumple su función principal de revisar las decisiones del foro de instancia para asegurarse que las mismas son justas y que encuentran apoyo en la normativa establecida.[19]

**B.**

La desestimación es un pronunciamiento judicial que resuelve el pleito de forma desfavorable para el demandante sin celebrar un juicio en su fondo.[20] Cónsono con dicho propósito, la Regla 10.2 de Procedimiento Civil permite a un demandado presentar una moción antes de presentar su contestación a la demanda, solicitando que se desestime la misma.[21] Específicamente, la Regla 10.2 reconoce varios supuestos bajo los cuales es posible solicitar una desestimación, a saber:

---

[17] H. A. Sánchez Martínez, *Práctica Jurídica de Puerto Rico, Derecho Procesal Apelativo*, San Juan, Lexis-Nexis de Puerto Rico, Inc., 2001, pág. 547.
[18] *Negrón v. Srio. de Justicia*, 154 DPR 79, 92-93 (2001).
[19] *Id.*, pág. 93.
[20] Véase, R. Hernández Colón, *Práctica Jurídica de Puerto Rico Derecho Procesal Civil*, 6ta. Ed., Puerto Rico, *LexisNexis* (2017), sec. 3901, pág. 411; *Casillas Carrasquillo v. ELA*, 209 DPR 240, 247 (2022).
[21] Hernández Colón, *op. cit.*, sec. 2601, pág. 305; 32 LPRA Ap. V, R. 10.2; *Casillas Carrasquillo v. ELA*, *supra*.

… (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; (6) dejar de acumular una parte indispensable.[22]

"[A]l resolver una solicitud de desestimación fundamentada en que se deja de exponer una reclamación que justifica la concesión de un remedio, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente".[23] A su vez, los hechos bien alegados, deberán ser considerados de la forma más favorable a la parte demandante.[24] En consecuencia, nuestro ordenamiento procesal civil permite al demandado solicitar la desestimación de la reclamación cuando de las alegaciones de la demanda es evidente que alguna de las defensas afirmativas prosperará.[25]

Finalmente, ante una solicitud de desestimación, el tribunal deberá identificar los elementos que establecen la causa de acción y las meras alegaciones concluyentes que no pueden presumirse como ciertas.[26] Específicamente, deberá evaluar "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida".[27] Así pues, para prevalecer, el demandado deberá probar que el demandante no tiene derecho a remedio

---

[22] Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2.
[23] *Costas Elena v. Magic Sport Culinary Corp.*, 2024 TSPR 13, ___ DPR ___ (2024).
[24] *López García v. López García*, 200 DPR 50, 69 (2018); *González Méndez v. Acción Social et al.*, 196 DPR 213, 234 (2016); *Rivera Sanfeliz v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015). Véase, además, *Eagle Security Police, Inc. v. Efrón Dorado*, 211 DPR 70, 84 (2023).
[25] *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043 (2020); *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 701 (2012).
[26] Véase, Hernández Colón, *op. cit.*, sec. 2604, pág. 307; *Ashcroft v. Iqbal*, 556 US 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 US 544 (2007).
[27] *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497, 505 (1994). Véase, además, *Costas Elena v. Magic Sport Culinary Corp.*, *supra*.

alguno, aun interpretando la demanda de la manera más liberal a su favor.[28]

### C.

La industria de seguros de Puerto Rico se regula a través de la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como el *Código de Seguros de Puerto Rico*, en adelante el Código de Seguros, y del *Código Civil* como fuente de derecho supletorio.[29]

El Código de Seguros establece, como regla de hermenéutica fundamental, que "todo tipo de contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta".[30]

A su vez, si los términos del contrato de seguro son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.[31] De ordinario, su lenguaje debe ser interpretado en su significado corriente y común, sin ceñirse demasiado al rigor gramatical.[32] Así, aquellos contratos de seguros cuyos términos, condiciones y exclusiones sean claros y específicos, y no den margen a ambigüedades o distintas interpretaciones, se deben

---

[28] *López García v. López García, supra; SLG Sierra v. Rodríguez*, 163 DPR 738, 746 (2005). Véase, además, *Cobra Acquisitions, LLC v. Mun. Yabucoa*, 210 DPR 384, 396 (2022).

[29] *Birriel Colón v. Supermercado Los Colobos*, 2023 TSPR 120, __ DPR __ (2023); *Banco de Vivienda v. Pagán Ins. Underwriters*, 111 DPR 1, 6 (1981); 31 LPRA sec. 12.

[30] *Feliciano Aguayo v. Mapfre Panamerican Insurance Company*, 207 DPR 138, 151 (2021). Véase, además, *Natal Cruz v. Santiago Negrón*, 188 DPR 564, 576-577 (2013); 26 LPRA sec. 1125.

[31] *Díaz Rodríguez v. García Neris*, 208 DPR 706, 721 (2022); *Natal Cruz v. Santiago Negrón, supra*, pág. 577; 31 LPRA sec. 3471; 31 LPRA sec.14.

[32] *WMM, PFM et al. v. Colegio et al.*, 211 DPR 871, 886 (2023); *Jiménez López v. Simed*, 180 DPR 1, 10 (2010).

hacer valer conforme la voluntad de las partes contratantes.[33]

Ahora bien, puesto que el contrato de seguro es uno de adhesión -ya que el asegurador lo redacta en su totalidad-, éste debe interpretarse liberalmente en beneficio del asegurado.[34] En consecuencia, las cláusulas oscuras o ambiguas se interpretarán a favor del asegurado.[35] Por el contrario, en ausencia de ambigüedad, las cláusulas del contrato son obligatorias.[36]

En caso de dudas en la interpretación de una póliza, ésta debe resolverse de manera que se realice su propósito, a saber: proveer protección al asegurado.[37] No obstante, esta norma no tiene el efecto de obligar a que se interprete a favor del asegurado una cláusula que favorece al asegurador y cuyo alcance y significado es claro y libre de ambigüedad.[38]

Finalmente, en lo aquí pertinente, el Art. 11.190 Código de Seguros dispone:

> (1) Ninguna póliza entregada o expedida para entrega en Puerto Rico, que cubra un objeto de seguro residente, localizado o a ejecutarse en Puerto Rico, contendrá ninguna condición, estipulación o acuerdo:
>
> […]
>
> (c) Para limitar el derecho de entablar acción contra el asegurador **a un período menor de un año desde la fecha en que surja causa de acción** en relación con todo seguro que no sea seguro de propiedad, seguro contra

---

[33] *Jiménez López v. Simed, supra*. Véase, además, *Guerrido García v. UCB*, 143 DPR 337, 348 (1997).
[34] *WMM, PFM et al. v. Colegio et al., supra* (citando a *San Luis Center Apts. et al. v. Triple-S*, 208 DPR 824, 833 (2022)); *Monteagudo Pérez v. ELA*, 172 DPR 12, 21 (2007).
[35] *WMM, PFM et al. v. Colegio et al., supra*; *Natal Cruz v. Santiago Negrón, supra*; *Jiménez López v. Simed, supra*; *Guerrido García v. UCB, supra*.
[36] *Natal Cruz v. Santiago Negrón, supra*; véase *Coop. Ahorro y Créd. Oriental v. SLG*, 158 DPR 714 (2003); *Domínguez v. GA Life*, 157 DPR 690 (2002).
[37] *Natal Cruz v. Santiago Negrón, supra*, pág. 578; *Quiñones López v. Manzano*, 141 DPR 139, 155 (1996).
[38] *Natal Cruz v. Santiago Negrón, supra*, pág. 577; *Quiñones López v. Manzano, supra*.

> siniestros marítimos y seguro de transporte; en las pólizas de seguro de propiedad, contra siniestros marítimos y de transporte, tal derecho no podrá limitarse a un período menor de un año desde la fecha en que ocurra el suceso que resulte en la pérdida.
>
> […][39]

Lo anterior resulta relevante a la controversia ante nuestra consideración, en la medida en que el texto de la cláusula 11 de la póliza en controversia dispone lo siguiente:

> **11. Demanda Contra Nosotros. No se podrá presentar una acción a menos que se hayan satisfecho las disposiciones de esta póliza y la acción se inicie dentro de un plazo de un año después de la fecha de la pérdida.**[40]

**-III-**

La peticionaria alega que la reclamación de daños y perjuicios en su contra está prescrita. Esto es así, porque, aunque tuvieron conocimiento del daño el **1 de septiembre de 2019**, los recurridos no presentaron la demanda sino "más de dos (2) años y medio" después, es decir, el **27 de mayo de 2022**.[41] Conviene añadir, que no presentaron prueba de haber interrumpido el término prescriptivo mediante alguno de los medios que contempla nuestro ordenamiento civil. En consecuencia, corresponde desestimar la demanda con perjuicio.

Por su parte, los recurridos arguyen que la cláusula 11 de la póliza de seguros es leonina y denota la mala fe de MAPFRE en el proceso de contratación, por las siguientes razones: (1) los recurridos no

---

[39] Art. 11.190 de la Ley Núm. 77 de 19 de junio de 1957 (26 LPRA sec. 1119). (Énfasis suplido).
[40] Apéndice de la peticionaria, pág. 51. (Énfasis suplido).
[41] *Id.,* pág. 188. "Los Pérez formulan una primera Demanda el 27 de mayo de 2022 de la cual desistieron sin perjuicio sin haber emplazado a MAPFRE. Luego incoan la presente demanda el 25 de mayo de 2023, casi cinco años después del paso del huracán María y casi tres años de advenir en conocimiento de su deficiencia en la compensación esperada".

consintieron a la cláusula; (2) es una póliza de seguros proveniente de una industria altamente técnica; (3) la cláusula acorta el término en catorce o tres años dependiendo del Código Civil aplicable; (4) los recurridos no tuvieron poder alguno en la negociación al no haber negociado la póliza de seguros, y; (5) la cláusula únicamente favorece a MAPFRE. En su opinión, estas son suficientes para declarar nula la cláusula en cuestión y que el tribunal aplique el término prescriptivo de quince (15) años contenido en el Código Civil de 1930.

Con el beneficio de la comparecencia de ambas partes, colegimos que la peticionaria tiene razón. Veamos.

En primer lugar, el Código de Seguros autoriza términos prescriptivos no menores de un (1) año, *supra*. En el pleito de epígrafe, la póliza de seguros en cuestión acoge dicho término. Esta es la ley entre las partes, por lo cual la reclamación de los recurridos está prescrita en su totalidad, tanto la reclamación *ex contractu* como la reclamación contractual. Sobre el particular conviene recordar que esta cláusula no es ambigua, por lo cual, es obligatoria para ambas partes.

En segundo lugar, como hay un término prescriptivo que regula la relación contractual entre las partes -el de 1 año contenido en la póliza de seguros-, no hay que acudir a ninguna referencia al derecho supletorio del Código de Seguros, a saber, el Código Civil. Por tal razón, no aplica el término prescriptivo de cuatro (4) años del Código Civil de 2020.

Finalmente, en todo caso, tampoco aplica el Código Civil de 2020 porque los hechos del presente pleito datan

del **1 de septiembre de 2019** y el Código Civil de 2020 entró en vigor el **28 de noviembre de 2020.**

-IV-

Por los fundamentos antes expuestos, se expide el auto de *certiorari* y se revoca la *Resolución* recurrida, en cuanto determinó que la acción de incumplimiento de contrato de los recurridos contra MAPFRE no estaba prescrita. En consecuencia, se desestima con perjuicio y en su totalidad la demanda contra MAPFRE por estar prescrita.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones