Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| ÁNGEL J. SÁNCHEZ VELÁZQUEZ<br><br>**APELANTE**<br><br>v<br><br>AIG INSURANCE COMPANY Y OTROS<br><br>**APELADOS** | KLAN202401083 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm. SG2024CV00144<br><br>Sobre: INCUMPLIMIENTO DE CONTRATO |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 13 de marzo de 2025.

### I.

El 3 de diciembre de 2024, el señor Ángel J. Sánchez Velázquez (señor Sánchez Velázquez o apelante) presentó una *Apelación* en la que solicitó que revoquemos una *Sentencia* emitida el 7 de octubre de 2024 por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI o foro primario), notificada y archivada digitalmente en autos al día siguiente.[1] En el dictamen, el TPI desestimó una *Demanda* sobre incumplimiento de un contrato de seguro por incapacidad, promovida por el señor Sánchez Velázquez en contra de AIG Insurance Company (AIG o parte apelada). El foro primario resolvió que el apelante no tenía derecho a compensación bajo los términos y condiciones de la póliza expedida a su favor por AIG.

El 9 de diciembre de 2024, emitimos una *Resolución* en la que le concedimos a AIG hasta el 2 de enero de 2025 para presentar su alegato en oposición.

---

[1] Apéndice de la *Apelación*, págs. 8-14.

El 11 de diciembre de 2024, el señor Sánchez Velázquez radicó una *Moción en torno a la Regla 19* en la que solicitó que, pese a levantar errores sobre la suficiencia de la prueba, permitiéramos que el recurso se viera en sus méritos sin la necesidad de reproducir las incidencias de una vista argumentativa, celebrada por el TPI el 1 de octubre de 2024.

El 27 de diciembre de 2024, AIG presentó un *Alegato en oposición a apelación* en el que solicitó que declaremos Sin Lugar la *Apelación* y confirmemos la *Sentencia* apelada.

Contando con el beneficio de la comparecencia de ambas partes, damos por perfeccionada la *Apelación*. En adelante, pormenorizamos los hechos procesales más relevantes a la atención del recurso.

**II.**

El caso de marras tiene su génesis el 28 de febrero de 2024 cuando el señor Sánchez Velázquez radicó una *Demanda* sobre incumplimiento de contrato y daños y perjuicios en contra de AIG.[2] En ella, el apelante reclamó que AIG incumplió una póliza de seguro por incapacidad expedida a su favor porque denegó su reclamación por incapacidad total y permanente. A esos efectos, alegó que:

1. El 13 de febrero de 2014 la Demandada le notificó al Demandante que sí tenía aprobada una póliza "Family Care" bajo el número 0091007365, certificado BPFCI 000000 843 y con efectividad al "08/31/2010" (en adelante la "póliza f.c.").
2. Que como parte de las sumas aseguradas en la "póliza f.c." estaba el beneficio por sufrir un accidente en el lugar de empleo que le causara al Demandante como beneficiario cubierto por la "póliza f.c.", una incapacidad total y permanente, con derecho entonces a una compensación de $20,000.00.
3. Que el 6 de mayo de 2011 el Demandante sufrió un accidente del trabajo, ya que, ejerciendo como guardia penal en el Departamento de Administración de Corrección del Gobierno de Puerto Rico, fue agredido por varios confinados.
4. Que el Demandado sufrió múltiples golpes en diferentes partes del cuerpo lo cual requirió tratamiento médico en el Hospital Industrial. Posteriormente recibió tratamiento a través de la Corporación del Fondo del Seguro del Estado, bajo el caso 11- 77-01097-2.

---

[2] Íd., págs. 1-4.

5. Que el Demandante fue sometido a varias operaciones y recibió una determinación de incapacidad de la Administración del Seguro Federal, recibiendo los beneficios de dicha agencia.

6. Que el Demandante se comunicó por teléfono en enero o principios de febrero del 2017 con la parte Demandada para recibir orientación, en torno a su reclamo al derecho a la "póliza f.c."

7. Que para febrero de 2017 el Demandante le notificó por correo electrónico a la Demandada, de los documentos previamente recibidos de AIG Insurance Company para comenzar su reclamación. Desde febrero a mayo de 2017 el Demandante notificó los diferentes documentos sin recibir respuesta afirmativa.

8. Que la Demandada le comunicó al Demandante en fecha 31 de agosto de 2017 que no podía concederle los beneficios o derechos de la póliza porque la aprobación de incapacidad del "seguro social… (fue) por un periodo, esperan que haya una mejoría médica y recomiendan una evaluación dentro de 24 meses."

9. Que la Demandada también le informó en la misma fecha del 31 de agosto de 2017 al Demandante que como el caso del Fondo del Seguro del Estado ha sido reabierto para recibir más tratamiento, no estaba incapacitado total y permanentemente y no era posible cubrir la reclamación o beneficio.

10. Que la parte Demandada no examinó, ni refirió al Demandante a algún médico especialista para que le evaluara y determinara si procedía o no la determinación de incapacidad que alegaba el Demandante.

11. Que la parte Demandada ha incumplido con la "póliza f.c." y responde al Demandante por la cantidad asegurada de $20,000.00.[3]

El 11 de abril de 2024, AIG presentó una *Moción de desestimación* en la que solicitó al foro primario que desestimara la *Demanda*.[4] En ella, planteó que la reclamación era idéntica a una radicada por el señor Sánchez Velázquez el 15 de julio de 2020, la cual recibió el alfanumérico SG2020CV00221, desestimada por inacción el 31 de enero de 2023.[5] Por ello, arguyó que el apelante intentaba volver a litigar una acción prescrita, toda vez que los hechos se remontaban al 2014. En apoyo de su solicitud, incluyó la *Demanda*, la *Contestación enmendada a demanda*, una *Moción de desestimación a tenor con la Regla 39.2(b)* promovida por AIG y la *Sentencia* desestimatoria del caso anterior.

---

[3] Íd., págs. 2-3.
[4] Íd., págs. 69-87.
[5] Véase Entrada Núm. 30 del expediente digital del SG2020CV00221 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Dicha *Sentencia* fue notificada y archivada digitalmente en autos el 1 de febrero de 2023.

El 1 de julio de 2024, el señor Sánchez Velázquez radicó una *Moción en cumplimiento de orden* en la que se opuso a la desestimación de la *Demanda* y solicitó que se le concediera un término a la parte apelada para contestar la reclamación.[6] Según argumentó, la acción no estaba prescrita porque AIG denegó la cubierta el 31 de agosto de 2017 y el apelante interrumpió el término el 15 de julio de 2020 cuando presentó una primera *Demanda* en el SG2020CV00221, desestimada por el foro primario en una *Sentencia* del 31 de enero de 2023.

El 2 de agosto de 2024, AIG presentó una *Contestación a la demanda* en la que, entre otras cosas, negó las alegaciones principales de la reclamación y alegó que el apelante no sometió evidencia de su incapacidad total y permanente mientras estaba vigente la póliza.[7] En específico, admitió las alegaciones 1, 2, 3, 4, 5, 7, 8, 9 y negó las 6, 10 y 11. Asimismo, planteó que, respecto a las alegaciones 1 a la 7, negaba que la relación contractual establecida mediante la póliza contuviera una causa de acción por daños contractuales.

Ese mismo día, la parte apelada también radicó una *Moción solicitando sentencia sumaria conforme a derecho* en la que solicitó al TPI que dictara *Sentencia* desestimando la *Demanda* porque la póliza expedida a favor del apelante no cubría el evento reclamado.[8] Según planteó, únicamente correspondía resolver si el señor Sánchez Velázquez tenía derecho a ser indemnizado según los términos de la póliza expedida por AIG. En apoyo de la solicitud, incluyó: (1) la Póliza 009-1007365 (Póliza); (2) un resumen de los beneficios de la Póliza; (3) una *Contestación a interrogatorios* de AIG en el caso SG2020CV00221; (4) un *Accident Insurance Claim Form*,

---

[6] Apéndice de la *Apelación*, págs. 91-110.
[7] Íd., págs. 5-7.
[8] Íd., págs. 115-162.

el formulario de reclamación sometido por el apelante con fecha del 21 de julio de 2011; (5) una carta del 20 de mayo de 2011 enviada por Chartis Insurance (predecesora de AIG) al apelante; (6) una carta de AIG del 9 de noviembre de 2018 dirigida al apelante en la que se denegó la cubierta; y (7) una *Resolución* emitida el 29 de junio de 2016 por la Comisión Industrial de Puerto Rico (Comisión Industrial) sobre el resultado de un examen médico del apelante. Basándose en dichos documentos, arguyó, en síntesis, que no estaba en controversia que:

1. El 31 de agosto de 2010, AIG Insurance Company expidió la Póliza a nombre del apelante, la cual proveía una cubierta para incapacidad total y permanente por la que pagaría al apelante un beneficio mensual por un año hasta $20,000.00 si este sufría tal incapacidad a consecuencia de un accidente cubierto por el contrato.

2. La Póliza definía la incapacidad de la siguiente manera: "When as a result of injury and commencing within 180 days of the date of the accident and [sic] insured Person is totally and permanently disabled and prevented from engaging in each and every occupation or employment for compensation or profit for which he is reasonably qualified by reason of his education, training or experience, ... disability has continued for a period of twelve consecutive months and is total, continuous and permanent at the end of this period,...".

3. El 21 de julio de 2011, el apelante suscribió un aviso de reclamación en el que alegó que el 6 de mayo de 2011 sufrió una lesión con motivo de un motín en su lugar de trabajo.

4. El 20 de mayo de 2011, AIG acusó recibo de la reclamación y le requirió al apelante que sometiera los últimos tres pagos de cuenta en los que apareciera debitada la prima, el formulario de la reclamación, los récords médicos del accidente y la factura de gastos médicos.

5. El 13 de octubre de 2011, AIG denegó la reclamación. En noviembre de 2018, volvió a abrir la reclamación ante las comunicaciones de la apelante y su representante legal.

6. El 9 de noviembre de 2018, la señora Jennifer Santiago Cotto (señora Santiago Cotto), representante de AIG, le notificó al apelante que la posición de AIG era cónsona con una carta enviada el 31 de agosto de 2017 en la que se confirmó que la póliza únicamente se activaba por una lesión y que comenzara dentro de los 180 días posteriores a la fecha del accidente.

7. El 23 de junio de 2016, la Corporación del Fondo del Seguro del Estado (CFSE) o la Comisión Industrial no certificó que el apelante tuviera una incapacidad total y permanente y estuviera impedido de desempeñar ocupaciones.

8. La lesión ocurrió el 6 de mayo de 2011, pero, al 21 de julio de 2016, se mantenía abierto el caso del apelante ante la CFSE, entidad que tampoco ha determinado que esté total y permanentemente incapacitado.

Por lo anterior, arguyó que el apelante no proveyó información a AIG de que hubiese estado incapacitado dentro de los 180 días del accidente que originó su reclamación.

El 4 de agosto de 2024, el TPI emitió una *Orden* en la que le concedió al apelante un término de veinte (20) días para expresar su posición respecto a la solicitud de sentencia sumaria promovida por AIG.[9]

El 19 de agosto de 2024, el señor Sánchez Velázquez presentó una *Moción urgente: solicitando autorización para descubrimiento de prueba y se posponga el término concedido de replicar a la solicitud de sentencia sumaria* en la que solicitó al TPI que permitiera el descubrimiento de prueba y dejara pendiente la réplica a la solicitud de sentencia sumaria.[10] Según argumentó, el foro primario debía mantener vigentes sus órdenes previas a los efectos de que las partes se reunieran para preparar el *Informe de manejo del caso* y se celebrara una conferencia sobre el estado de los procedimientos para el 1 de octubre de 2024.

El 20 de agosto de 2024, AIG radicó una *Réplica a moción urgente* en la que se opuso a la petición más reciente del apelante y, en su lugar, solicitó que se le ordenara someter su parte del *Informe para el manejo del caso*.[11]

El 21 de agosto de 2024, el TPI emitió una *Orden* en la que resolvió "[l]a vista del 1ro de octubre de 2024, será una vista argumentativa sobre los escritos presentados por ambas partes, de manera presencial".[12]

El 1 de octubre de 2024, el foro primario celebró la Vista argumentativa señalada, cuyas incidencias quedaron recogidas en

---

[9] Íd., págs. 111-112. Notificada y archivada digitalmente en autos al día siguiente.
[10] Íd., págs. 163-164.
[11] Íd., págs. 165-167.
[12] Íd., pág. 174. Notificada y archivada digitalmente en autos al día siguiente.

una *Minuta*, transcrita el 2 de octubre de 2024.[13] En ella, se consignó lo siguiente:

1. La Vista argumentativa se celebró de forma híbrida con la comparecencia en sala del representante legal del apelante y de forma virtual del señor Sánchez Velázquez y la representación legal de AIG.
2. El tribunal indicó que la Vista argumentativa era para escuchar los planteamientos de las partes sobre la *Moción solicitando sentencia sumaria conforme a derecho* y la *Moción urgente: solicitando autorización para descubrimiento de prueba y se posponga el término concedido para replicar a la solicitud.*
3. AIG indicó que el apelante nunca replicó la solicitud de sentencia sumaria, pese a que el TPI le concedió un término, el cual venció sin que cumpliera.
4. El apelante planteó que su solicitud consistió en que se autorizara el descubrimiento de prueba y que, al culminarlo, las partes presentaran las mociones dispositivas, incluyendo la réplica a la solicitud de sentencia sumaria. Además, reiteró que el descubrimiento de prueba era necesario en este caso.
5. AIG reafirmó su solicitud de desestimación sumaria del caso y resaltó que esta era la segunda reclamación que presentaba el apelante sobre el mismo asunto. Asimismo, subrayó que la reclamación del apelante estaba activa en la Comisión Industrial.
6. El apelante enfatizó además que tenía cerca de cincuenta (50) correos electrónicos que componían más de 800 páginas, notificadas a AIG. Por ello, solicitó que se le concediera un término para presentarlos.

El 7 de octubre de 2024, el TPI emitió la *Sentencia* apelada en la que desestimó la *Demanda*.[14] En ella, resolvió que el señor Sánchez Velázquez no tenía derecho a compensación según los términos y condiciones de la Póliza. Formuló las siguientes once (11) determinaciones de hechos incontrovertidos:

1. El 31 de agosto de 2010 AIG Insurance Company – Puerto Rico expidió la póliza 009-1007365 a nombre de Ángel J. Sánchez Velázquez bajo el programa "Family Care Plan".
2. La póliza provee varias cubiertas, incluyendo una para incapacidad total y permanente resultante de un accidente y que se pagará un beneficio mensual por un año de hasta un máximo de $20,000.00 si el reclamante sufre incapacidad total y permanente a consecuencia de un accidente cubierto bajo la póliza.
3. La póliza tiene una fecha de vigencia de 31 de agosto de 2010.
4. El 21 de julio de 2011 Ángel J. Sánchez Velázquez suscribió un aviso de reclamación en donde alegó que el 6 de mayo de 2011, a las 11:00 a.m., sufrió una lesión con motivo de un motín en el complejo correccional de Ponce.
5. El 20 de mayo de 2011 AIG Insurance Company – Puerto Rico le requirió información de los últimos tres estados de cuenta donde aparecía debitada el pago de la prima, el

---

[13] Íd., págs. 177-178. Notificada y archivada digitalmente en autos ese mismo día.
[14] Apéndice de la *Apelación,* págs. 8-14.

formulario de reclamación, los récords médicos para la fecha del accidente y las facturas de gastos médicos, si aplicaran.

6. Bajo la Sección II, Coverage, Permanent Total Disability Indemnity Ryder, se define, en el idioma Inglés, incapacidad de la siguiente manera: "*When as a result of injury and commencing within 180 days of the date of the accident and* [sic] *insured Person is totally and permanently disabled and prevented from engaging in each and every occupation or employment for compensation or profit for which he is reasonably qualified by reason of his education, training or experience, … disability has continued for a period of twelve consecutive months and is total, continuous and permanent at the end of this period,…*"

7. El 13 de octubre de 2011 AIG Insurance Company – Puerto Rico denegó la reclamación a Ángel J. Sánchez Velázquez al éste no haber producido evidencia de una incapacidad total y permanente dentro del término indicado en la póliza.

8. El Sr. Ángel J. Sánchez Velázquez, por conducto de su abogado, sometió a la consideración de AIG Insurance Company – Puerto Rico documentación de tratamiento médico que estaba recibiendo el señor Sánchez en la Corporación del Fondo del Seguro del Estado, según manifestó la representación legal de la parte demandante en la vista del 1 de octubre de 2024.

9. El 31 de agosto de 2017 AIG Insurance Company – Puerto Rico volvió a confirmarle mediante comunicación a el asegurado que, bajo la póliza, el beneficio de incapacidad total y permanente solo se activaba como resultado de una lesión y comenzando dentro de los 180 días de la fecha del accidente y que bajo la póliza una persona asegurada está total y permanente incapacitada o impedido de ocuparse de todas y cada una de las ocupaciones o empleo o compensación o ganancia para la cual está razonablemente calificado por su educción, entrenamiento o experiencia.

10. Acorde con las expresiones efectuadas para récord por el representante legal de la parte demandante el 1 de octubre de 2024, luego del accidente laboral del 6 de mayo de 2011, el Sr. Ángel J. Sánchez Velázquez se acogió a los beneficios de compensación de la Corporación del Fondo del Seguro del Estado.

11. De igual forma, y contestando preguntas de este Tribunal el representante legal del demandante expresó para récord que el reclamante había apelado el por ciento de determinación de incapacidad de la Corporación del Fondo del Seguro del Estado por no estar de acuerdo con ella y que al 1 de octubre de 2024 el caso se encontraba todavía pendiente en la Comisión Industrial de Puerto Rico.[15]

En base a dichas determinaciones, resolvió que no estaba en controversia que el apelante no proveyó información médica, de la CFSE o de la Comisión Industrial en la que se indicara que dentro de los 180 días posteriores al 6 de mayo del 2011 estuviera incapacitado total y permanentemente de forma que le impidiera

---

[15] Íd., págs. 9-11.

desempeñar ocupaciones o empleo, según requería el lenguaje de la Póliza.

El 22 de octubre de 2024, el señor Sánchez Velázquez presentó una *Moción solicitando: determinación adicional de hechos y de reconsideración* en la que solicitó al TPI que determinara ciertos hechos adicionales a los formulados en su dictamen y que reconsiderara la desestimación del pleito.[16] Según puntualizó, el foro primario debía añadir los siguientes hechos a sus determinaciones:

1. La Parte Demandante solicitó mediante Moción el 19 de agosto de 2024 que se autorizara el descubrimiento de prueba y que una vez finalizado el descubrimiento de prueba entonces se concediera la oportunidad de replicar a la solicitud de sentencia sumaria. (SUMAC entrada #30)
2. La Parte Demandante informó en la vista celebrada el 1ro de octubre de 2024 que había entregado a la parte demandada en papel los documentos de 50 correos electrónicos con más de 800 páginas, el 10 de septiembre de 2024.
3. La Parte Demandante informó en la vista celebrada el 1ro de octubre de 2024 que entre los documentos de los 50 correos electrónicos con más de 800 páginas entregados eran del Demandante Ángel L. Sánchez Velázquez a Jennifer Santiago representante de la AIG (Parte Demandada), sobre la incapacidad del Demandante y tratamiento médico.
4. La Parte Demandada informó en la vista celebrada el 1ro de octubre de 2024 que el Dr. Pellicia y el Dr. Winston Ortiz atendieron al Demandante.
5. La Parte Demandada solicitó en la vista celebrada el 1ro de octubre de 2024 un breve término para someter la evidencia documental.
6. La Parte Demandada presentó como evidencia una carta o contestación que no aceptaba la incapacidad que la Administración del Seguro Social le otorgó al Demandante.[17]

Además, incluyó junto a la solicitud una decisión de la Administración del Seguro Social con fecha del 17 de agosto de 2016.

El 28 de octubre de 2024, AIG radicó una *Moción en cumplimiento de orden y sometiendo objeción a moción de la parte*

---

[16] Íd., págs. 16-51.
[17] Íd., pág. 17.

*demandante de fecha de 22 de agosto de 2024* en la que solicitó al TPI que declarara Sin Lugar la solicitud del apelante.[18]

El 31 de octubre de 2024, el TPI emitió, notificó y archivó digitalmente en autos una *Resolución* en la que declaró No Ha Lugar tanto la solicitud de determinaciones de hechos adicionales, como la reconsideración.[19] En primer lugar, resolvió que el apelante no expuso con suficiente particularidad y especificidad los hechos que estimaba probados, incumpliendo así con la Regla 43.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 43.2. En segundo lugar, estimó que, mediante la solicitud de reconsideración, el apelante pretendió introducir evidencia documental que no fue presentada en oposición a la moción de sentencia sumaria.

El 3 de diciembre de 2024, el apelante radicó ante nos la *Apelación* de epígrafe y le imputó al TPI la comisión de los siguientes errores:

1. COMETIÓ GRAVE ERROR EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA SUMARIA SIN PERMITIR EL DESCUBRIMIENTO DE PRUEBA Y VIOLENTAR EL DEBIDO PROCESO DE LEY.
2. COMENTIÓ [sic] GRAVE ERROR EL TRIBUNAL DE PRIMERA INSTANCIA AL NO CONSIDERAR LOS DOCUMENTOS QUE OBRAN EN EL EXPEDIENTE Y NO DICTAR SENTENCIA A FAVOR DEL DEMANDANTE Y POR NEGAR CON SU ACCIÓN LA IGUAL PROTECCIÓN DE LA LEY.
3. COMETIÓ GRAVE ERROR EL TRIBUNAL DE PRIMERA INSTANCIA Y ABUSO DE SU DISCRECIÓN, AL NO CONSIDERAR LA ORDEN DICTADA POR EL MISMO TRIBUNAL Y NO CONCEDER UN REMEDIO AL DEMANDANTE.

Es su posición que el TPI se equivocó al dictar sentencia sumaria sin permitir que se llevara a cabo descubrimiento de prueba y sin que se produjera toda la evidencia requerida para emitir el dictamen. En cambio, expresa que, si el foro primario permitía realizar descubrimiento de prueba, entonces hubiese podido

---

[18] Íd., págs. 53-58.
[19] Íd., págs. 59-60.

corroborar que no faltaba prueba médica estableciendo su incapacidad.

En esencia, alega que la prueba ofrecida rebate el fundamento de la sentencia sumaria de que no existía evidencia sobre la incapacidad del apelante. Para ello, según plantea, AIG tenía que presentar la totalidad de evidencia para sustentar su solicitud de sentencia sumaria por falta de prueba. Al respecto, destaca que la parte apelada no sometió lo siguiente:

1. la tercera página del formulario de reclamación del apelante.
2. dos (2) correos electrónicos de AIG atendiendo la reclamación el 20 de febrero y el 2 de marzo de 2017.
3. dos (2) contestaciones del apelante a dichos correos electrónicos el 26 de marzo y 18 de mayo de 2017.
4. una certificación médica que establecía la incapacidad total y permanente del apelante, contenida en el formulario del 23 de marzo de 2013.
5. una certificación del Departamento de Corrección y Rehabilitación (DCR) sobre los deberes y funciones ejercidos por el apelante, lo cual debía interpretarse como una confirmación de que estaba incapacitado.
6. una carta del Dr. Winston Ortiz en la que se desglosaron las condiciones de salud del apelante.
7. un formulario de AIG del 13 de enero de 2017, firmado por el Dr. Francisco Pellicia Mercado, el cual también certificó la incapacidad del apelante.

Según relata, AIG recibió estos documentos por correo electrónico en el 2017 y en papel el 10 de septiembre de 2024, pero, ante su alegada ausencia, ofreció como prueba algunos de ellos en su *Moción solicitando: determinación adicional de hechos y de reconsideración.*

Por otra parte, señala que el TPI contó con una *Resolución* de la Comisión Industrial, una *Declaración jurada* del apelante y las respectivas contestaciones a interrogatorios de cada parte. Sobre ello, subraya que las afirmaciones bajo juramento, así como documentos de la Administración del Seguro Social, demuestran la incapacidad total y permanente del apelante. Asimismo, añade que no ha obtenido el alta de la CFSE precisamente porque está incapacitado.

Por último, puntualiza que, si bien no presentó una oposición a la sentencia sumaria, la objetó por prematura y solicitó que se ordenara realizar el descubrimiento de prueba y que, una vez este concluyera, se le concediera un término para contestar y presentar mociones dispositivas.

El 11 de diciembre de 2024, el señor Sánchez Velázquez radicó una *Moción en torno a la Regla 19* en la que solicitó que acogiéramos el recurso, así como sus planteamientos de error, sin la necesidad de que reprodujera las incidencias de la Vista argumentativa celebrada el 1 de octubre de 2024.[20]

El 27 de diciembre de 2024, AIG presentó un *Alegato en oposición a apelación* en el que se opuso a la *Apelación* y solicitó que se confirmara la *Sentencia* apelada. En síntesis, su contención es que la solicitud de sentencia sumaria no se basó en insuficiencia de la prueba, sino en que, como cuestión de hecho, hubo falta de cubierta bajo las disposiciones de la Póliza. Es decir, el planteamiento de la solicitud era estrictamente contractual: si el apelante tenía derecho a ser indemnizado según los términos de la Póliza. Ante ello, argumenta que la reclamación no procede porque bajo los términos y condiciones de la Póliza no se sustentaron los requisitos para expedir el beneficio pactado, específicamente el de acreditar la incapacidad total y permanente dentro del plazo establecido.

A lo anterior, la parte apelada suma que sí se realizó descubrimiento de prueba, según evidencian las 869 páginas de documentos recibidas por AIG el 10 de septiembre de 2024. También, agrega que, en el SG2020CV00221, las partes

---

[20] Nótese que, según se desprende de la Entrada Núm. 40 del expediente digital del presente caso en el SUMAC, el 3 de diciembre de 2024, el apelante presentó una *Moción solicitando la regrabación* en la que solicitó al TPI la regrabación de la Vista argumentativa celebrada el 1 de octubre de 2024. Asimismo, surge de la Entrada Núm. 45 del expediente digital del caso en el SUMAC que, el 10 de diciembre de 2024, la Secretaria de Servicio a Sala correspondiente certificó que la referida regrabación fue enviada al apelante.

intercambiaron interrogatorios, los cuales forman parte del expediente del presente caso. Además, arguye que es improcedente que el apelante presente evidencia documental que no fue sometida al TPI porque optó por no oponerse a la moción de sentencia sumaria, lo cual también intentó hacer en la Vista argumentativa.

Por último, aduce que, si carecía de prueba, el apelante podía solicitar que el TPI le brindara la oportunidad de obtener información adicional al amparo de la Regla 36.6 de Procedimiento Civil, *supra.*

Reseñado el trámite procesal más relevante del caso, pormenorizamos el derecho aplicable a la controversia presentada en la *Apelación* de epígrafe.

**III.**

**A.**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36 de Procedimiento Civil, *supra,* R. 36. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. ***Rodríguez García v. UCA***, 200 DPR 929, 940 (2018); ***Bobé et al. v. UBS Financial Services***, 198 DPR 6, 20 (2017); ***SLG Zapata-Rivera v. J.F. Montalvo***, 189 DPR 414, 430 (2013). Mediante este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria sobre la totalidad de la reclamación o parte de esta. De esta forma, se promueve la descongestión de calendarios, así como la pronta adjudicación de controversias cuando una audiencia formal resulta en una dilación innecesaria. ***Vera v. Dr. Bravo***, 161 DPR 308, 331-332 (2004). Desde la perspectiva de la parte contra quien se reclama, la Regla 36.2 de Procedimiento Civil, *supra,* R. 36.2, dicha parte podrá presentar una moción de sentencia sumaria a partir de la fecha en que fue emplazado, pero no más tarde de los

treinta (30) días siguientes a la fecha establecida para concluir el descubrimiento de prueba.

Ahora bien, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que **sean claros**; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. ***PFZ Props., Inc. v. Gen. Acc. Ins. Co.***, 136 DPR 881, 911-912 (1994). Asimismo, al evaluarse los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia, consciente en todo momento de que su determinación puede privar a una de las partes de su día en corte. ***León Torres v. Rivera Lebrón,*** 204 DPR 20, 44 (2020). De la mano con este precepto del debido proceso de ley, el juzgador deberá utilizar el principio de liberalidad a favor del opositor de la moción, lo cual implica que, de haber dudas sobre la existencia de controversias de hechos materiales, entonces deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. ***Meléndez González et al. v. M. Cuebas***, 193 DPR 100, 138 (2015); ***Ramos Pérez v. Univisión***, 178 DPR 200, 216-217 (2010).

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. ***Meléndez González et al. v. M. Cuebas***, supra, pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. ***Ramos Pérez v. Univisión***, supra, pág. 213. La controversia sobre el hecho material debe ser real. Íd. A saber:

> [U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada

sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria. Íd., págs. 213-214, *citando a* P. E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria*, 3 (Núm. 2) Forum 3, 8 (1987).

En suma, deberá demostrar que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 2017, pág. 317.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. ***Meléndez González et al. v. M. Cuebas***, supra. En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales. Íd., citando a ***Ramos Pérez v. Univisión***, supra, pág. 214. De esta manera, central entre las responsabilidades de la parte promovida se encuentra que debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. ***León Torres v. Rivera Lebrón,*** supra. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". Íd. De esta forma, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. ***SLG Zapata-Rivera v. JF Montalvo***, supra; ***Ramos Pérez v. Univisión***, supra, pág. 215; ***Cruz Marcano v. Sánchez Tarazona***, 172 DPR 526, 550 (2007). De quedarse de brazos cruzados, se dictará sentencia sumaria en su contra si procede. Regla 36.3(c) de Procedimiento

Civil, *supra*, R. 36.3(c). Cónsono con lo anterior, la Regla 36.3(b) de

Procedimiento Civil, *supra*, R. 36.3(b) dispone:

> (b) La contestación a la moción de sentencia sumaria deberá ser presentada dentro del término de veinte (20) días de su notificación y deberá contener lo siguiente:
> (1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior;[21]
> (2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> (3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> (4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.

En síntesis, ha quedado establecido que los tribunales no podrán dictar sentencia sumaria en cuatro situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existan alegaciones afirmativas en la demanda sin refutar; (3) cuando surja de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial; o (4) cuando no proceda como cuestión de derecho. ***Oriental Bank v. Perapi***, 192 DPR 7, 26-27 (2014).

Entretanto, desde el punto de vista procesal, la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4, impone que, si en virtud de una moción de sentencia sumaria no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y resulta necesario celebrar un juicio, entonces es obligatorio que el tribunal resuelva la moción realizando una

---

[21] Esto es: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos en controversia; y (3) la causa de acción, reclamación o parte respecto a la cual se solicita sentencia sumaria.

determinación: (1) de los hechos esenciales y pertinentes sobre los que no hay controversia sustancial; (2) de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos; (3) de hasta qué extremo la cuantía de los daños u otra reparación no está en controversia; y (4) ordenando los procedimientos ulteriores que entienda justos, lo cual podría incluir una vista evidenciaria limitada a los asuntos en controversia. En dicho caso, al celebrarse el juicio se considerarán probados los hechos especificados, se procederá en conformidad y, a base de las determinaciones realizadas en virtud de esta regla, se dictarán los remedios que correspondan, si alguno. Íd.

Entretanto, la Regla 36.6 de Procedimiento Civil, *supra*, permite que el TPI deniegue la solicitud de sentencia sumaria o posponga su consideración cuando la parte que se opone no cuente con declaraciones juradas para establecer los hechos esenciales para justificar su posición. En específico, la referida regla dispone:

> Si de las declaraciones juradas de la parte que se oponga a la moción resulta que ésta no puede, por las razones allí expuestas, presentar mediante declaraciones juradas hechos esenciales para justificar su oposición, el tribunal podrá denegar la solicitud de sentencia o posponer su consideración, concediéndole a la parte promovida un término razonable para que pueda obtener las declaraciones juradas, tomar deposiciones, conseguir que la otra parte le facilite cierta evidencia o dictar cualquier otra orden que sea justa. Regla 36.6 de Procedimiento Civil, *supra*.

De otra parte, en ***Meléndez González et al. v. M. Cuebas***, supra, el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra*, y los criterios que la jurisprudencia le exige al foro primario. Íd., pág. 118. Asimismo, deberá examinar el expediente de

la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Íd. Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. Íd.

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra.* Íd.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. Íd.

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el derecho. Íd., pág. 119.

**B.**

Nuestro Tribunal Supremo ha reconocido que existen, en esencia, dos modalidades de sentencia sumaria. *Medina v. M.S & D. Química de P.R., Inc.,* 135 DPR 716, 731-732 (1994); véase también *Celotex Corp. v. Catrett,* 477 US 317 (1986) (Reconociendo que bajo la Regla 56 de Procedimiento Civil Federal, Fed. R. Civ. P. 56, existe la modalidad de sentencia sumaria por insuficiencia de la prueba). La primera, la más tradicional, es aquella que se dicta cuando los documentos ofrecidos por la promovente demuestran ausencia de controversia real sobre los

hechos esenciales del caso y únicamente corresponde aplicar el derecho. *Jusino et als. v. Walgreens,* 155 DPR 560, 577 esc. 15 (2001); *Medina v. M.S & D. Química de P.R., Inc.,* supra, pág. 732. La segunda se conoce como la sentencia sumaria por insuficiencia de la prueba y es aquella que se dicta cuando, <u>después de un descubrimiento de prueba exhaustivo</u>, se determina que la prueba existente no es suficiente o adecuada para sostener las alegaciones y los elementos esenciales de la reclamación y, por ello, únicamente corresponde desestimarla. Íd.; *Medina v. M.S & D. Química de P.R., Inc.,* supra. A esta segunda le aplican las mismas normas y principios que tradicionalmente se han aplicado al considerarse mociones de sentencia sumaria. *Medina v. M.S & D. Química de P.R., Inc.,* supra, pág. 734.

Bajo la modalidad de insuficiencia de prueba, la parte promovente puede presentar su moción de sentencia sumaria después de que las partes han realizado un adecuado y apropiado descubrimiento de prueba. Íd., pág. 732. Además, puede acompañar su moción de documentos o someterla sin documento alguno, cuando estos obran en el expediente del tribunal. Íd. También, puede incluir evidencia afirmativa que niegue algún elemento esencial de la reclamación. Íd.

Lógicamente, la parte promovente tiene el peso de demostrar que la parte promovida no cuenta con evidencia admisible suficiente para aprobar al menos un elemento esencial. Íd. También, tiene el peso de demostrar que se ha llevado a cabo un descubrimiento de prueba completo, adecuado y apropiado, evidenciando que ha explorado la posibilidad de la existencia de evidencia admisible. Íd., pág. 733. Es decir, tiene que poner al tribunal en posición de evaluar si el descubrimiento de prueba realizado fue adecuado. Íd. Para hacerlo, no será suficiente una simple alegación de que no existe evidencia suficiente para probar el caso. Íd. Tampoco se considerará

adecuado el descubrimiento de prueba cuando surja de un análisis de los documentos sometidos en apoyo de la solicitud, la oposición y el expediente que la parte promovente omitió auscultar alguna información que condujera a obtener prueba admisible. Íd.

Entretanto, en aras de derrotar una moción de sentencia sumaria bajo esta modalidad, la parte promovida puede: (1) presentar prueba admisible, que pueda tornarse admisible o que dé lugar a prueba admisible, para probar los elementos esenciales del caso; (2) evidenciar que existe prueba en el récord que derrotaría la contención de insuficiencia; (3) demostrar que la solicitud es prematura porque el descubrimiento no fue adecuado, fue incompleto o no se realizó; o (4) probar que no conviene resolver el caso mediante sentencia sumaria. Íd., pág. 734.

En resumidas cuentas, para que el tribunal pueda dictar sentencia sumaria por insuficiencia de la prueba, la parte promovente debe persuadirlo de que: (1) no es necesario celebrar una vista evidenciaria; (2) la parte promovida no cuenta con evidencia suficiente para probar algún hecho esencial; y (3) como cuestión de derecho, procede la desestimación. *Pérez v. El Vocero de P.R.,* 149 DPR 427, 447 (1999). Ahora bien, también es necesario que se le haya brindado al promovido una amplia oportunidad de realizar un descubrimiento de prueba adecuado. Íd. Por eso, es posible definir un cuarto requisito: que se haya realizado un descubrimiento de prueba adecuado. Mientras tanto, para impedir que se dicte sentencia sumaria bajo esta modalidad, la parte oponente debe persuadir al foro primario de la ausencia de un descubrimiento de prueba adecuado o debe producir aquella evidencia que probaría los elementos esenciales y materiales del pleito. *Cabrero v. Zayas,* 167 DPR 766, 786 (2006) (Sentencia).

De ordinario, esta norma parte del principio de que le corresponde a la parte demandante probar su caso. *Ramos Pérez*

*v. Univisión*, supra, pág. 218. Aún más, no hay razón para ir a juicio cuando la parte demandante no tiene prueba a su favor tras culminar el descubrimiento de prueba. Íd., pág. 218-219. Ahora bien, dicha parte no queda desamparada, toda vez que, bajo la Regla 36.6 de Procedimiento Civil, *supra*, puede solicitar que se posponga la consideración de la moción de sentencia sumaria hasta que se complete un descubrimiento de prueba adecuado. Íd., pág. 219. Completado este, dicha parte tendrá que oponerse a la moción. Íd.

## C.

La Regla 23.1 de Procedimiento Civil, *supra*, R. 23.1, regula el amplio alcance que poseen las partes en el descubrimiento de prueba, el cual se permite sobre cualquier materia no privilegiada que sea pertinente al caso en controversia.

En esencia, el descubrimiento de prueba es el mecanismo disponible para que las partes obtengan hechos, documentos y otras cosas que están en poder de la otra o que son del exclusivo conocimiento de esta y son necesarias para hacer valer sus derechos. ***McNeil Healthcare v. Mun. Las Piedras II,*** 206 DPR 659, 672 (2021), citando a I. Rivera García, *Diccionario de términos jurídicos*, 3ra ed. rev., San Juan, Ed. LexisNexis, 2000, pág. 70. Como mecanismo, responde al principio básico de que las partes tienen derecho a descubrir, previo al juicio, toda la información relacionada con su caso, independientemente de quién la posea. ***Rivera y otros v. Bco. Popular***, 152 DPR 140, 152 (2000). Por eso, las normas que lo gobiernan tienen como propósito: (1) precisar los asuntos en controversia; (2) obtener evidencia para utilizarla en el juicio, y así evitar sorpresas en esa etapa de los procedimientos; (3) facilitar la búsqueda de la verdad; y (4) perpetuar la evidencia. Íd.

Nuestro más alto foro ha resuelto que el descubrimiento de prueba ha de ser amplio y liberal, lo cual es valioso y necesario porque su buen uso acelera los procedimientos, propicia las

transacciones, evita las sorpresas indeseables en el juicio en su fondo y permite flexibilidad y cooperación entre las partes. (Citas omitidas). *McNeil Healthcare v. Mun. Las Piedras II,* supra, págs. 672-673; *Vicenti v. Saldaña,* 157 DPR 37, 54 (2002); *Rivera y Otros v. Bco. Popular*, supra, pág. 153; *Lluch v. España Service Sta.,* 117 DPR 7299, 743 (1986); *Sierra v. Tribunal Superior,* 81 DPR 554, 560 (1959). Cónsono con ello, los foros primarios tienen amplia discreción para regularlo, mientras que los foros apelativos no deben intervenir con esa discreción, a menos que medie prejuicio, parcialidad o error manifiesto en la aplicación de normas procesales o sustantivas. Íd., pág. 672; *Rivera y otros v. Bco. Popular,* supra, págs. 153-154.

De la mano con esta amplia discreción, también se ha reconocido que el esquema establecido por la referida regla delega a los representantes legales de las partes el trámite del descubrimiento de prueba, en aras de fomentar la flexibilidad y limitar la intervención del foro primario. *Rivera y otros v. Bco. Popular,* supra, pág. 153.

Ahora bien, lo anterior no significa que el alcance del descubrimiento de prueba sea ilimitado. El foro primario tiene la facultad para modificar los términos o concluir el descubrimiento de prueba según las particularidades del caso. *Rivera y otros v. Bco. Popular,* supra, pág. 154. Dentro de esa facultad, deben balancear el interés de garantizar la pronta resolución de las controversias y el de velar que las partes tengan la oportunidad de realizar un descubrimiento amplio. Íd., págs. 154-155; *Lluch v. España Service Sta.,* supra, págs. 742-743. Asimismo, este mecanismo debe tener finalidad para evitar la dilación innecesaria de los procesos y para proteger a las partes de gastos o molestias indebidas. Íd. esc. 6 y 7.

**D.**

En nuestra jurisdicción, conforme ha sido pautado por nuestro Tribunal Supremo, la industria de los seguros está revestida de un alto interés público, juega un crucial papel económico porque le permite a personas y negocios proteger sus recursos transfiriendo el impacto de ciertos riesgos a cambio del pago de una prima y, por ello, ha sido extensamente reglamentada por el Estado. ***Maderas Tratadas v. Sun Alliance,*** 185 DPR 880, 896-897 (2012).

De acuerdo con la norma jurisprudencial vigente, la póliza es el documento escrito en el que se plasman los términos que rigen el contrato de seguro, los cuales constituyen la ley entre las partes. Íd., pág. 897. Este, según lo define el Art. 1.020 del Código de Seguros, 26 LPRA sec. 102, es aquel contrato "mediante el cual una persona se obliga a indemnizar a otra, a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". En otras palabras, a cambio de una prima, el asegurador se compromete a indemnizar a un tercero, el asegurado o reclamante, por una pérdida contingente a que ocurra un evento futuro incierto e imprevisto. ***Maderas Tratadas v. Sun Alliance,*** supra, pág. 897 (citando a R. Cruz, Derecho de Seguros, San Juan, Pubs. J.T.S., 1999, pág. 387).

Entre los tipos de seguros, se encuentran los de vida y los de incapacidad física. Por un lado, el Art. 4.020 del Código de Seguros, *supra* sec. 402, define el seguro de vida como el seguro sobre vidas humanas o correspondiente a las mismas e incluye la concesión de rentas anuales, beneficios adicionales en caso de muerte o mutilación por accidente, beneficios adicionales en caso de incapacidad total o permanente del asegurado y métodos opcionales para la liquidación de réditos. Por el otro, el Art. 4.030 del Código de Seguros, *supra* sec. 403, prescribe que el seguro de incapacidad física es aquel seguro contra daños corporales, incapacidad o

muerte por accidente o los gastos ocasionados por tales motivos, así como contra la incapacidad por enfermedad o los gastos ocasionados por esta.

En otro extremo, en adición a que la Póliza constituya la ley entre las partes y establezca los términos del contrato de aseguro, el Art. 11.250 del Código de Seguros, *supra* sec. 1125, reglamenta la interpretación de las pólizas al disponer específicamente que "[t]odo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta". En este tema, las normas generales del Código Civil sobre la interpretación de los contratos solo serán aplicables de manera supletoria. ***Banco de la Vivienda v. Pagán Ins. Underwriters,*** 111 DPR 1, 6 (1981).

A lo anterior se añade que, en nuestra jurisdicción, los contratos de seguros son contratos de adhesión y, por ello, como norma general, sus disposiciones deben ser interpretadas liberalmente a favor del asegurado. ***Maderas Tratadas v. Sun Alliance,*** supra, págs. 898-899. Ahora bien, esta norma no es de aplicación cuando las cláusulas en cuestión son claras y libres de ambigüedad, en cuyo caso se hará valer la clara intención de las partes y el asegurado estará obligado por los términos incluidos en el contrato. Íd., pág. 899. En este contexto, se entiende por términos claros aquellos que son bastante lúcidos para ser entendidos en un único sentido, sin lugar a duda, ni controversias ni diversidad de interpretaciones ni necesitar razonamientos o demostraciones impugnables para su comprensión. ***S.L.G. Francis-Acevedo v. SIMED***, 176 DPR 372, 387 (2009) (citando a ***Sucn. Ramírez v. Tribl. Superior***, 81 D.P.R. 357, 361 (1959)).

**IV.**

En esta ocasión, tenemos la oportunidad de resolver si procede una sentencia sumaria en un caso en el que se reclama el incumplimiento por una aseguradora de un contrato de seguro que envuelve un beneficio por incapacidad total y permanente al denegarle cubierta a un asegurado por no demostrar su incapacidad según los términos de la póliza. Además, debemos identificar si la solicitud de sentencia sumaria y el dictamen se basaron en insuficiencia de la prueba porque, de ser así, nos correspondería examinar si se llevó a cabo un descubrimiento de prueba adecuado o si la parte oponente logró controvertir la contención de insuficiencia de prueba.

En el dictamen, el TPI resolvió que el señor Sánchez Velázquez no tenía derecho a compensación porque no proveyó información médica o de la CFSE o de la Comisión Industrial para demostrar que, dentro de los 180 días posteriores al 6 de mayo de 2011, día del accidente, estuviera incapacitado total y permanentemente e impedido de desempeñar ocupaciones o empleo. Según el foro primario, eso era lo que requería la Póliza y como el apelante lo incumplió, no correspondía que AIG reconociera el beneficio por incapacidad pactado.

En desacuerdo, el señor Sánchez Velázquez plantea que tanto la *Moción solicitando sentencia sumaria conforme a derecho* como la *Sentencia* apelada se fundamentaron en la insuficiencia de prueba para demostrar su causa de acción. Por eso, aduce que, como no se llevó a cabo descubrimiento de prueba, el dictamen no procede, toda vez que viola el debido proceso de ley, le priva de su día en corte e incumple con la normativa correspondiente a esta modalidad de sentencia sumaria.

A lo anterior, el apelante añade que, a la luz de una serie de documentos omitidos por AIG en su solicitud de sentencia sumaria,

se podría constatar que cuenta con prueba suficiente para demostrar su causa de acción. Ahora bien, el apelante no los presentó porque optó por no oponerse a la *Moción solicitando sentencia sumaria conforme a derecho* como requiere la Regla 36.3(b) de Procedimiento Civil, *supra,* y se limitó a solicitar la realización de un descubrimiento de prueba adecuado y la posposición de la consideración de la solicitud de sentencia sumaria. En su lugar, realizó una oferta de prueba de estos documentos en su *Moción solicitando: determinación adicional de hechos y de reconsideración* en contra del dictamen.

Igualmente, plantea que ciertos documentos que obran en el expediente demostraron que está total y permanentemente incapacitado. Los documentos consisten en una *Resolución*[22] emitida por la Comisión Industrial el 29 de junio de 2016, una *Declaración jurada*[23] suscrita por el apelante en diciembre del 2021, sometida en el caso SG2020CV00221, y una *Contestación al primer pliego de interrogatorios y requerimiento de producción de documentos*[24] suscrita por el apelante en el SG2020CV00221. A la misma vez, denuncia que AIG tenía los documentos en su posesión, pero no los incluyó junto a su solicitud de sentencia sumaria.

Entretanto, en apoyo de la *Sentencia* apelada, AIG arguye que la solicitud de sentencia sumaria no se basó en insuficiencia de la prueba, sino que demostró que, según las disposiciones de la Póliza, el apelante no tenía derecho a ser indemnizado porque no acreditó que estuvo total y permanentemente incapacitado dentro del término establecido para ello. Al igual, aduce que sí se realizó descubrimiento de prueba y que, en todo caso, si el apelante entendía que carecía de prueba, podía solicitar que el TPI le brindara

---

[22] Apéndice de la *Apelación,* págs. 99-101.
[23] Íd., págs. 106-108.
[24] Íd., págs. 102-105.

la oportunidad de obtener información adicional según ofrece la Regla 36.6 de Procedimiento Civil, *supra*, pero no lo hizo. Por último, argumenta que no procede la consideración de los documentos sometidos por el apelante, toda vez que no fueron presentados ante el foro primario.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso y de los argumentos esbozados por las partes, en correcta práctica adjudicativa apelativa, resolvemos que el TPI incidió al emitir la *Sentencia* apelada. En esta ocasión, se precipitó al desestimar la acción bajo el fundamento de insuficiencia de la prueba sin permitir a las partes realizar un descubrimiento de prueba adecuado y exhaustivo. Al así actuar privó a la parte apelante de su derecho a realizar descubrimiento de prueba.

Un examen sosegado de la *Sentencia* apelada y de la *Moción solicitando sentencia sumaria conforme a derecho* arroja diáfanamente que están predicadas en la modalidad de insuficiencia de prueba. En la solicitud, AIG basó su petición desestimatoria en que el apelante no contaba con evidencia para demostrar que proveyó información a AIG de que hubiese estado incapacitado dentro de los 180 días del accidente que originó la reclamación. En el dictamen, el TPI adoptó esa conclusión. Así se desprende de las siguientes conclusiones de derecho consignadas en la *Sentencia* apelada:

17. Bajo la póliza "Family Care", expedida por la parte demandada, esta pagaría un beneficio mensual por un (1) año y hasta un máximo de $20,000.00, si el reclamante sufre una incapacidad total y permanente a consecuencia de un accidente cubierto bajo la póliza que haya comenzado dentro de los 180 días de la fecha del accidente. No existe controversia de que el demandante reclamó que el accidente ocurrió el 6 de mayo del 2011. Tampoco existe controversia de que el Demandante no proveyó información médica ni del Fondo del Seguro del Estado, ni de la Comisión Industrial de Puerto Rico, que indicara que dentro de los ciento ochenta (180) días del accidente, estuvo total y permanentemente incapacitado,

lo que le impedía desempeñar ocupaciones o empleo, según el claro y no ambiguo lenguaje de la póliza.

18. Al reclamante se le informó de estas determinaciones en el año 2011 y posteriormente en el año 2017 y 2018, cuando, a través de su abogado, se le indicó de la no cubierta bajo la póliza. No surge del expediente que la parte demandante haya indicado y provisto información de que él estaba incapacitado total y permanentemente dentro de los 180 días luego del accidente que originó su reclamación.[25]

Para resolver de esa manera, entre otras cosas, era necesario que:

(1) AIG demostrara que se llevó a cabo un descubrimiento de prueba completo, adecuado y apropiado, evidenciando que se exploró la posibilidad de existencia de evidencia admisible. ***Medina v. M.S & D. Química de P.R., Inc.,*** supra, pág. 733; ***Pérez v. El Vocero de P.R.,*** supra.

(2) el señor Sánchez Velázquez no probara que la solicitud fue prematura porque el descubrimiento de prueba no fue adecuado, fue incompleto o no se realizó. Íd., pág. 734;

(3) el foro primario brindara amplia oportunidad al apelante de realizar un descubrimiento de prueba adecuado y exhaustivo. Íd., pág. 732; ***Pérez v. El Vocero de P.R.,*** supra; ***Jusino et als. v. Walgreens,*** supra.

Analizado el trámite procesal del caso, resulta evidente que no se cumplió a cabalidad con ese requisito. Al momento de la desestimación no se había llevado a cabo descubrimiento de prueba alguno. El intercambio de documentos previo al litigio, como parte de otra reclamación, no forma parte del descubrimiento de prueba que debe llevarse a cabo en un pleito conducido bajo la supervisión y autoridad del TPI. Tampoco debe considerarse parte del descubrimiento aquel intercambio de interrogatorios iniciado en el SG2020CV00221, un litigio desestimado por inacción en su etapa naciente. Asimismo, el señor Sánchez Velázquez hace referencia a una cantidad considerable de documentos que, si bien no presentó en una oposición a la solicitud de sentencia sumaria, podrían considerarse como evidencia que podría conducir a probar los elementos esenciales del caso o derrotar la contención de insuficiencia. Íd., pág. 734.

---

[25] Apéndice de la *Apelación,* págs. 12-13.

Esta realidad procesal torna prematura tanto la *Moción solicitando sentencia sumaria conforme a derecho*, como la *Sentencia* apelada. Por eso, en esta etapa del procedimiento, no correspondía resolver el asunto de forma sumaria bajo el supuesto de insuficiencia de prueba. Incluso, aun si consideráramos los intercambios de documentos como descubrimiento, como sugiere AIG, resultaría imperativo determinar que fue inadecuado o incompleto. De un pormenorizado estudio del voluminoso legajo que constituyen los autos del caso resulta palmario que existe controversia sobre los siguientes hechos materiales:

1. Si la evidencia producida por el apelante a la aseguradora es suficiente para probar incapacidad total y permanente dentro de la definición de la póliza.

2. Si la determinación de la aseguradora de denegar cubierta es conforme a la prueba médica sometida.

3. Si el apelante está incapacitado total y permanentemente y corresponde compensarlo con la suma de dinero que se pactó en la póliza de seguros.

Adviértase además que el foro recurrido basó su determinación en **las argumentaciones** del abogado del apelante en la vista argumentativa celebrada.[26]

Debemos recordar que las argumentaciones no constituyen prueba. ***U.P.R. Aguadilla v. Lorenzo Hernández***, 184 DPR 1001, 1013 (2012); ***Miguel A. Pereira Suárez v. Junta de Directores del Condominio Ponciana***, 182 DPR 485, 509-510 (2011).

Por todo lo anterior, corresponde que revoquemos la *Sentencia* apelada y devolvamos el caso al foro primario para que se lleve a cabo un descubrimiento de prueba adecuado. En atención a que la presente *Sentencia* equivale a declarar Sin Lugar la *Moción solicitando sentencia sumaria conforme a derecho* luego de un análisis *de novo* que arrojó que la misma era prematura. De las

---

[26] Íd., págs. 9-11.

alegaciones de las partes surge controversia sobre los hechos materiales pormenorizados precedentemente, que hacen necesario el descubrimiento de prueba.

## V.

Por los fundamentos pormenorizados, se *revoca* la *Sentencia* apelada y *se devuelve* el caso para la continuación de los procedimientos, conforme lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones